97 So.2d 404

**Irving C. SUIRE and Calvert Fire Insurance Company,**

**v.**

**Lottery WINTERS, Marquette Casualty Company and Clemire Norris.**

No. 43090.

June 28, 1957.

Rehearing Denied Oct. 8, 1957.

Pugh & Bourdreaux, by Charles J. Bourdreaux, Lafayette, for plaintiffs-appellants.

Dubuisson & Dubuisson, Opelousas, for defendants.

SIMON, Justice.

This cause comes to us on certiorari addressed to the Court of Appeal, First Circuit, and involves primarily the question of fact whether a motorist, who, allegedly blinded by the switching of opposing oncoming lights from "dim" to "bright", collided with the rear of a loaded cane truck and trailer parked in the center of the north lane of traffic on a standard two-lane concrete surfaced highway, at about 7:30 p.m., was contributorily negligent such as would bar recovery for damages to property and for personal injuries incurred by him as the result of the collision.

This suit was filed by Irving C. Suire and his collision insurer, Calvert Fire Insurance Company, who became subrogated to the rights of its assured to claim reimbursement for payments made under its policy to him, against Lottery Winters, his insurer, Marquette Casualty Company, and Clemire Norris, the alleged employer of Winters.

The primary issue presented to the trial court was resolved in favor of plaintiff, absolving him from the charge of contributory negligence imposed by defendants, and accordingly the trial court rendered judgment in favor of plaintiff, Calvert Fire Insurance Company and against Lottery Winters and Marquette Casualty Company, jointly and in solido in the sum of $565.30, together with legal interest; and in favor of plaintiff, Irving C. Suire, and against Lottery Winters and Marquette Casualty Company, in the full sum of $5,836.80, together with legal interest from date of judicial demand until paid, and all costs. Judgment was further rendered in favor of Clemire Norris, rejecting the demands of the plaintiff.

The court of appeal reversed the judgment of the district court and dismissed

plaintiff's suit, holding him to be guilty of contributory negligence for his failure to have seen the parked loaded cane truck ahead of him.

The record discloses that on November 15, 1952 at approximately 7:30 P.M. plaintiff was driving his automobile on Louisiana Highway No. 25 in a westerly direction, between Delcambre and Erath in Vermilion Parish, at a speed of about 30–35 miles per hour when the front portion of his automobile collided violently with and underneath the rear portion of a truck and trailer loaded with sugar cane parked in the lane of traffic in which plaintiff was properly traveling. The said truck was left unattended on the highway in violation of law.

LSA–R.S. 32:241 requires that no vehicle shall be parked on the main traveled portion of any highway unless it is impractical to do otherwise. In no event shall any person park a vehicle, attended or unattended, upon a highway unless a distance of fifteen feet of the highway opposite such parked vehicle is left unobstructed and free for passage and unless a clear view of such vehicle exists from a distance of at least 200 feet in each direction. Even in such instances if the vehicle is parked on the highway one-half hour after sunset or one-half hour before sunrise, the operator thereof shall display appropriate signal lights thereon sufficient to warn approaching traffic of its presence.

LSA–R.S. 32:241, subd. B creates an exception to the general rule for parking vehicles and provides:

"The provisions of this rule shall not apply to the driver of any vehicle *which is disabled while on the main traveled portion of a highway so that it is impossible to avoid stopping and temporarily leaving the vehicle in that position.* However, the driver shall remove the vehicle as soon as possible, and until it is removed *it is his responsibility to protect traffic."* (Italics ours.)

LSA–R.S. 32:441 mandatorily provides that trucks such as the present one operating on the highways between one-half hour after sunset and one-half hour before sunrise must be equipped with at least three portable flares, reflectors, or other similar devices which may be plainly visible for a distance of 500 feet, and that the operator of such a vehicle shall immediately upon bringing his vehicle to a stop upon the traveled portion of the highway, at any time during this period, place one such warning device at the side of his vehicle just inside the black line marking the center of dirt or gravelled highways, and place one such device approximately 100 feet to the front and another 100 feet to the rear of his vehicle, *and shall maintain these devices in this position during the time the vehicle remains parked.*

The defendant Lottery Winters was hauling a load of sugar cane when his truck be-

came disabled because of a flat rear tire, and for fear that the truck would turn over he did not remove it from the highway to the shoulder thereof. However, instead of discharging his responsibility of protecting traffic while the truck was parked in the lane of travel as required by LSA–R.S. 32:-241, Winters set out two reflectors at a point fifteen feet to the front and to the rear of his truck and departed therefrom with a friend in order to pick up another tire, leaving the truck unattended. During his absence and while the truck was left unattended the accident herein occurred. The failure on the part of the said operator was properly decreed by the district court and the appellate court as gross negligence.

Plaintiff observed no burning flares, reflectors or any other type of warning device situated at or near the location of the truck. The semi-trailer was barrel shaped and commonly known as a "cane trailer". The rear thereof slanted outward and upward causing its lower portion to be recessed several feet. It was covered with dirt and dust. Plaintiff alleged that the said truck had been left on the highway without any lights of any kind burning thereon.

Plaintiff was traveling in his proper lane of travel and contends that upon approaching opposite oncoming traffic he switched his headlights from "bright" to "dim" and decreased the speed of his automobile, and that the headlights of the opposing automobile were switched from "dim" to "bright"

an instant before the collision, temporarily blinding him and totally obscuring the presence of the truck parked in his lane of travel. Plaintiff contended that he had no notice or warning of the presence of said truck on the highway and therefore had no opportunity whatsoever to avoid the collision.

In view of the various disputed contentions relative to the particular physical facts and circumstances surrounding the accident herein, as well as the invariable differences and inconsistencies found in the testimony of the witnesses as to their appreciation and comprehensions of said facts, we are acutely aware of the delay which expired between the date of the accident and the date of the trial of the issues presented herein. The record reveals that the accident occurred on November 15, 1952, the suit was filed June 9, 1953 and trial on the merits was begun on March 23, 1955.

In determining whether plaintiff was contributorily negligent in failing to observe a stationary vehicle obstructing the highway ahead, no hard and fast rule can be laid down, but the surrounding circumstances and facts bearing on this particular case necessarily must be considered. The duty to use reasonable care for the safety of others places the operator of a motor vehicle under continuing duty to keep a proper lookout for other vehicles which may be properly parked along the road as required by

statute or dictated prudence. However, although it is the duty of a motorist to have his car under such control that he can bring his vehicle to a stop within his range of vision, the standard the law gives us to apply is that to be exercised by a reasonably prudent motorist under a given set of facts and circumstances then prevailing and not that exercised by imaginary ideal motorists.

In the instant case, though several witnesses testified as to surrounding circumstances and physical evidence bearing on this particular accident prior and after thereto, there were only three persons at the scene of the accident at the time of its occurrence, the plaintiff herein and Mr. & Mrs. Overton Boudreaux, occupants of the oncoming vehicle which allegedly blinded plaintiff.

Mr. Boudreaux, who was traveling easterly in his right lane of traffic and on approaching the parked truck, testified that he observed plaintiff's car approaching the parked truck and almost simultaneously realized the impending collision. He further testified that when he saw plaintiff's car approaching the parked truck plaintiff's lights were on "dim". However, he did not see plaintiff's lights switch from bright to dim. He had no recollection whether his own lights were on bright or dim. He first noticed the parked truck when he was about 35 or 40 feet away from its front end. He was about 15 or 20 feet from the front end

of the truck when plaintiff's car collided therewith. He immediately brought his car to a stop on the shoulder of the highway to the rear of the collision and went to the assistance of plaintiff, whose car had jammed underneath the trailer. He was unyielding in his testimony that at the time of the accident the truck was parked without headlights or any other warning lights; that on reaching the scene of the accident to render aid to the plaintiff there were no clearance or tail lights on the trailer.

Mrs. Boudreaux testified that shortly after the accident she saw someone "turn on" the headlights of the truck. However, Mr. Boudreaux testified that he did not see the lights being turned on but realized that they had been turned on shortly after the accident.

Stephen Theriot, who had not witnessed the accident, testified that he was traveling westerly on his way to Erath; that shortly after leaving Delcambre he passed plaintiff who was then traveling at about 30–35 miles per hour; that on his reaching the parked truck he stopped behind the second of two vehicles which had stopped to the rear thereof; that when the two cars drove around the parked truck the second car knocked over the reflector which had been undoubtedly placed to the rear of the truck by its operator; that before he passed the truck, his brother-in-law, a passenger in his car, got out and replaced the reflector

in a standing position; and thereafter he proceeded on his way. Theriot also testified that he did not observe any lights of any kind burning on the truck or trailer.

The State trooper who arrived at the scene of the accident about 45 minutes after its occurrence noticed a reflector to the rear end of the truck that had been demolished and a reflector in the front of the truck which had been placed approximately 100 feet from its front end. He found the front lights of the truck burning and the rear lights demolished. The testimony of the State trooper does not in any way establish that the lights were on or off the truck at the time of the accident, nor the condition of the reflectors, the reason thereof being his belated arrival at the scene.

Two other witnesses were apparently confused as to the particular accident in question. It appears that two cane trucks had been disabled and parked a short distance apart. One witness admitted that at the time of the trial he could not positively identify which truck was involved in the accident herein; that at the time he passed the defendant's truck then parked on the highway, the accident herein had not occurred. His testimony, because of his confusion, is of little help to us, to say the least. The testimony of the other witness taken under deposition is hereinafter reviewed.

Both Lottery Winters and Joseph Guidry who picked up Winters from the site of his parked truck and took him to obtain a spare tire testified that reflectors were left at both ends of the parked truck and that its lights were "left burning". We are not impressed with the evidence pertaining to the alleged condition of the truck when it was left on the highway unattended, but we are vitally concerned with the facts and circumstances surrounding and bearing on the scene at the moment of the accident. As previously observed, Mr. & Mrs. Boudreaux, who approached the scene of this accident from the front end of the truck, testified that its headlights were not burning, which testimony corroborates the positive testimony of plaintiff that there were no warning lights which he would have observed had they been burning.

We are impressed with the highly significant fact that all of the witnesses who testified agreed that the truck which was covered with dust and mud was undiscernable in the roadway at night without warning lights until a motorist was within a few feet thereof.

Upon a close examination of the record we have no alternative but to conclude that the evidence overwhelmingly establishes that there were no lights or reflectors of any kind on the truck and trailer parked on the road such as to timely warn a motorist of its presence.

Defendants direct our attention to the deposition made by plaintiff's cousin, John J. Suire, while he was in the U. S. Armed Forces. In answer to interrogatories propounded, he testified that on the night of the accident herein, on his return trip to the army base where he was stationed, he followed closely behind plaintiff and saw him collide with the rear of the truck. Whereupon he applied the brakes of his vehicle and pulled into the left lane of traffic to pass both the automobile and truck, continuing onward to his destination without stopping to render assistance or aid, if needed. He explained this unconscionable failure on his part in that the sight of the accident made him nervous and thoughtless, and further because of the urgency of his duty to return to the army base where he was stationed without delay. Notwithstanding said urgency, he testified that he stopped to have a cup of coffee with his brother in Erath and was then informed that plaintiff had been involved in an accident. Though he witnessed the accident he neither commented thereon nor did he advise anyone that he had seen the accident in question until about a year thereafter.

The testimony of this witness is relied upon by defendants as discrediting the positive testimony of plaintiff that he was blinded by the bright lights on the oncoming Boudreaux car and that testimony of Mr. & Mrs. Boudreaux that no oncoming car had crossed in their lane of traffic to pass the accident. We do not place such weight or merit on this witness' testimony for a reading of the complete deposition made by him reveals a remoteness and lack of positive or independent knowledge of the particular accident here involved so as not to affect the conclusions we have reached herein.

In the recent case of Vowell v. Manufacturers Casualty Insurance Co., 229 La. 798, 86 So.2d 909, 913, we considered the situation and circumstances surrounding an accident in which the operator of a pickup truck ran into the rear of a lumber truck parked on the highway; and under the facts and circumstances of that case we held that the plaintiff was free from contributory negligence, saying:

"Our rule that a motorist traveling on the public highways after dark or during a rainstorm, fog, or other abnormal condition, which prevents him seeing ahead, except imperfectly, and for a short time and distance, must guard against striking objects in the road with which he may be suddenly confronted, constitutes an exception to the general rule that a motorist may assume that the road is safe for travel even at night. But that exception to the general rule is itself subject to the exception that a motorist traveling by night is not charged with the duty of guarding against striking an unexpected or unusual obstruction, which

he had no reason to anticipate he would encounter on the highway. Jacobs v. Jacobs, 141 La. 272, 74 So. 992, L.R.A. 1917F, 253; Kirk v. United Gas Public Service Co., 185 La. 580, 170 So. 1."

See also the cases of Gaiennie v. Co-operative Produce Co., 196 La. 417, 199 So. 377 and Dodge v. Bituminous Casualty Corporation, 214 La. 1031, 39 So.2d 720.

■ We conclude that the circumstances immediately surrounding the accident here under consideration, the height and color of the cane truck, its size and shape, the absence of lights thereon, the absence of a discernable flare or reflector, the absence of warning by anyone of the presence of the truck, the brightness of the headlights of the opposing oncoming car which blinded plaintiff, the moderate speed traveled by plaintiff prior to the accident and the fact that his lights were properly on dim reflecting downward and under the high trailer are all facts that lend themselves to a conclusion which exonerates the plaintiff, Irving C. Suire, from the charge of contributory negligence.

For the reasons assigned, the judgment of the Court of Appeal, First Circuit, is reversed, annulled and set aside, and it is ordered that the judgment of the district court be reinstated and made the judgment of this Court. All costs of this proceeding to be paid by defendants.