122 So.2d 303 (1960)
Donald D. JOSEY, Plaintiff-Appellant,
v.
GRANITE STATE FIRE INSURANCE COMPANY et al., Defendant-Appellee.
No. 9246.
Court of Appeal of Louisiana, Second Circuit.
June 22, 1960.
Rehearing Denied July 18, 1960.
Certiorari Denied October 5, 1960.
*304 Wellborn Jack, Shreveport, for appellant.
Mayer & Smith, Shreveport, for appellee.
HARDY, Judge.
This is an action for the recovery of damages for personal injuries, medical expenses and property damage resulting from an automobile accident, and plaintiff has appealed from a judgment in favor of defendants rejecting his demands.
Plaintiff's petition in this suit named as defendants the Granite State Fire Insurance Company and Robert C. Nargassan, and the judgment from which appealed shows that the demands against the said defendants were rejected. Upon examination of the record we cannot find that issue has been joined against the defendant, Nargassan, either by filing of answer or default, and it follows that the only party defendant-appellee before this court in connection with the instant appeal is the Granite State Fire Insurance Company. The same is true in the companion and consolidated suits in which Billy Joe McVay and James W. Moore are plaintiffs.
*305 The accident occurred shortly after midnight on February 1, 1958, on U. S. Highway 1, about seven and a half miles north of the City of Shreveport at a point where a private driveway leading to the residence of Daniel Pinchera enters the highway from the west. The road is straight for a considerable distance and there were no conditions adversely affecting visibility. Plaintiff was driving his 1957 Chevrolet Sedan north on the highway, accompanied by two companions, Billy Joe McVay and James Moore, who are plaintiffs in consolidated suits, when his car collided with a 1946 Ford Tudor Sedan, owned by Glenn V. Wilson, driven with his permission and consent by Robert C. Nargassan, an emancipated minor eighteen years of age at the time of the accident, and insured by Granite State Fire Insurance Company. At a point some five or six hundred feet south of the Pinchera driveway, plaintiff, Josey, began the execution of a passing movement of a car driven by Jesse J. Shaffer, and, at approximately the same time, Nargassan backed his vehicle out of the Pinchera driveway and onto the concrete slab of the highway. Nargassan testified that before entering the highway he made observation to the south and noticed the approach of a Chevrolet automobile some five hundred feet distant; that he made observation to the north, found the highway clear of traffic, continued backing into the highway at approximately a forty-five degree angle, and upon making another observation to the south discovered the approach of the Josey automobile which was moving in the left or west lane of the highway at a distance of approximately two hundred and fifty feet. Despite this observation Nargassan testified that he simply brought his car to a stop and made no attempt to move because the approaching car had plenty of room to move over to the other side of the highway. He further testified that he made no effort to pull forward "because I was still within my rights on my side of the road." Several conclusions are clearly established by the testimony of this defendant, namely, (1) that he backed out of a private driveway into a highway at a time when he so clearly observed an approaching automobile at a distance of some five hundred feet, that he could identify the car as being a Chevrolet; (2) that he did not see the Josey car which, at the distance fixed, was either behind the Shaffer vehicle or actually moving into the left lane for the purpose of passing, under either of which conditions it was open to observation and could and should have been seen by Nargassan; (3) after observing the Josey automobile at a distance of approximately two hundred and fifty feet, Nargassan remained at a stop, with his car in reverse gear, and did not make the slightest effort to pull forward and avoid the possibility of a collision.
The testimony of the plaintiff, Josey, conflicts in several respects with that of Nargassan. According to Josey's version of the occurrence, he was driving at a speed of sixty to sixty-five miles per hour at the time he made the passing movement of the Shaffer car approximately five to six hundred feet from the Pinchera driveway; he did not see the Nargassan car until he was at a distance of some two hundred twenty-five feet and had begun angling back to the east lane of the highway. He located the position of the Nargassan car, which he thought was still moving in reverse, with its left rear wheel approximately upon the center line of the highway; he cut his car to the right but was unable to avoid the collision and struck the left rear fender of the Nargassan car.
Following the impact Josey's car went off the highway onto the east shoulder, the driver lost control, the car swung back across the highway to the west and finally crashed into a building owned by Sam A. Sardisco, plaintiff in a companion suit, several hundred feet north and west of the point of impact.
It is the testimony of Josey's two companions, McVay and Moore, that they were engaged in adjusting the radio and did not see the Nargassan car until an exclamation *306 by Josey focused their attention upon the highway in front of the Josey automobile. Both of these witnesses corroborate Josey as to the approximate position of the Nargassan car, as to the speed at which Josey was driving and his efforts to avoid the collision.
Shaffer's testimony confirms and corroborates that of Josey with reference to the location of the passing movement, the approximate speed of the two vehicles, that is, fifty to fifty-five miles per hour for the Shaffer vehicle and sixty to sixty-five miles per hour for the Josey car. Shaffer further testified that after Josey had passed his car he continued in the west lane of the highway for a distance of sixty to sixty-five yards and then began angling to his right toward the east lane. This witness also testified that the Nargassan car had backed out into the highway at approximately a forty-five degree angle and that, while the car was on the west side of the road, the rear thereof had reached a point at about the center line of the highway.
The only other material testimony was given by H. H. Pittman, a Deputy Sheriff of Caddo Parish, who investigated the accident shortly after its occurrence. The only facts developed by this witness were that, after the accident, the left rear wheel of the Nargassan car was approximately six or seven feet west of the center of the highway, and there was some dirt located to the rear of the car at approximately the same distance and location from the center line.
Photographs of the Nargassan car shows it was struck on the left rear fender and bumper behind the left rear wheel, indicating that the Josey car lacked only a few feet of making a safe passing to the rear.
In his reasons for judgment it appears that the district judge predicated his judgment upon the conclusions that Josey's actions in passing the Shaffer car and continuing in the west lane of the highway without returning to his proper lane of travel was the proximate cause of the accident, and that the defendant Nargassan was entirely free of negligence. Our examination of the record, evaluation of the evidence and appreciation of the established facts convinces us that the trial judge was guilty of manifest error in reaching the above conclusions.
First, we have experienced no difficulty whatsoever in reaching the conclusion that Nargassan was guilty of acts constituting gross negligence in backing his car out of a private drive and into a main highway when he clearly observed one car approaching and could and should have observed the approach of a second car; that he was further guilty of negligence, after observing the Josey automobile approaching the west lane of the highway at a distance of approximately 200 feet, in taking no action to clear the highway and avoid the possibility of a collision. These acts of negligence constituted direct and proximate causes of the accident. An unusual degree of care is required of motorists who drive vehicles from a private driveway into a highway, and this requirement is increased when the vehicle is being backed into the highway. The appropriate statutory provision is found in LSA-R.S. 32:237, subd. E, which reads:
"The driver of a vehicle entering a public highway from a private road * * * shall yield the right of way to all vehicles approaching on the public highway * * *."
The requirement of extreme care is set forth in numerous decisions of our courts, among which we note Dipino v. Joe Galino & Son, La.App., 154 So. 772; Honeycutt v. Carver, La.App., 25 So.2d 99; Strehle v. Giaise, La.App., 46 So.2d 685; Turner v. Southern Farm Bureau Casualty Insurance Co., La.App., 91 So.2d 436; Johnson v. Whitfield, La.App., 89 So.2d 413; Gutierrez v. Columbia Casualty Co., La. App., 100 So.2d 537.
While conceding Josey's right to overtake and pass the Shaffer car counsel for *307 defendants urges that under such circumstances Josey owed a high degree of care as required by the Highway Regulatory Act, particularly LSA-R.S. 32:233, subd. C, which provides:
"The driver of a vehicle shall not drive to the left side of the center line of the highway in overtaking and passing another vehicle traveling in the same direction, unless such left side is clearly visible and free from oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be made in perfect safety. Whenever an accident occurs under such circumstances, the responsibility therefor shall rest prima facie upon the driver of the vehicle doing the overtaking or passing."
We would not venture to deny either the application or the reason of the above quoted statutory provision, but we are of the firm opinion that under the facts of the instant case Josey was not guilty of any negligence in making the passing movement of the Shaffer car. He was not required to anticipate the negligence of Nargassan in backing out into the highway. The general principle was somewhat recently stated in the opinion of the Supreme Court in Vowell v. Manufacturers Casualty Insurance Co., et al., 229 La. 798, 86 So.2d 909, 913, as follows:
"* * * A motorist traveling by night is not charged with the duty of guarding against striking an unexpected or unusual obstruction, which he had no reason to anticipate he would encounter on the highway."
The above rule was relied upon by our brethren of the First Circuit in Brown v. Employers Mutual Liability Insurance Company of Wisconsin, 116 So.2d 861, 863, which case involved some factual circumstances somewhat analogous to the instant case. The opinion declared that a motorist is exculpated from negligence contributing to an accident allegedly arising from his failure to perceive an unexpected or unusual obstruction in his path in the absence of a reasonable opportunity to perceive such obstruction and avoid the accident, citing Suire v. Winters, 233 La. 585, 97 So.2d 404; and Pennsylvania Fire Insurance Co. v. Wright, La.App., 110 So.2d 235. The opinion further specifically observed:
"The driver of plaintiff's vehicle, observing the Harris headlights shining across the road, was under no duty to anticipate that the driver of the Harris vehicle had with such gross negligence permitted the front end of his car to protrude onto the traveled lane of the through highway * * *."
In the instant case the expression "the traveled lane" would apply to the passing lane which was lawfully being partially occupied by the Josey car in the execution of a reasonable passing movement under conditions which give no indication of danger or obstruction in connection therewith. For this reason, we observe, in passing, that we do not regard the exact location of the Nargassan car as being controlling, or even substantially affecting the issues of negligence. It matters not whether the Nargassan Ford was partially across the center lane of the highway or entirely within the west lane thereof, a few feet removed from said center line. The negligent act of Nargassan had already been committed and the position of his car at an angle clearly constituted an unanticipated obstruction to the safe passage of the Josey car.
However, it is urged that there was no excuse for Josey's failure to see the Nargassan car before or as he turned into the west lane to begin passing the Shaffer automobile. In support of this contention counsel argues that Nargassan saw Josey "* * * immediately upon his entry into the south bound lane," and, further, that the headlights of the Nargassan car should have warned him of its presence in the west lane of the highway. We cannot find that *308 any of these arguments are justified. In the first place, it is abundantly clear from Nargassan's testimony that he did not see the Josey car immediately upon its entry into the southbound lane but perceived its approach only when at a distance of some two hundred fifty feet it had completed the passing of the Shaffer car and was beginning to return to the northbound traffic lane. Nor can it be held that the lights of the Nargassan car should have served as a warning to approaching traffic. On this particular point all the evidence is in complete accord and conclusively establishes the fact that the Nargassan car entered the highway at approximately a forty-five degree angle, in which position its headlights were not shining down the highway but onto the roadside, and the small tail-light with which the old model car was equipped could not be perceived by the drivers of the approaching vehicles.
It is scarcely necessary to reiterate the principle that a vehicle on a public highway has the right-of-way over one emerging from private grounds; Stroud v. Davis & Lawhead Funeral Home, La.App., 154 So. 476, quoting Berry on Automobiles, Section 1024.
Nor do we find that Josey was guilty of any act of negligence which caused or contributed to the occurrence of the accident. He was completely justified in negotiating the passing movement of the Shaffer car, for the highway was clear of traffic as far as he could discern, and he was not required to anticipate the presence of an obstruction.
We confess we have been somewhat puzzled by the insistence of Nargassan that he could see and recognize the make of an automobile some five hundred feet or more distant at night. While we were disposed to accept the testimony that visibility was heightened by the light of a full moon, we thought the point sufficiently material to justify an independent investigation. The result of this investigation establishes the fact that the phase of the moon on the night of January 31, 1958, was the first quarter, which had begun at 9:18 p. m. on January 28th; that the moon rose at 2:25 p. m. on January 31st and set at 4:19 a. m. on February 1st. It follows that the moon was well past its zenith at the time of the accident and had declined well toward the horizon.
We are fully authorized in ascertainment of the above facts by the well recognized rule that courts are justified in taking judicial notice of natural phenomena, among which have been specifically recognized the time of the rising and setting of the moon or sun on a particular day; the various phases of the moon on a certain date; the height of the moon at a given time, etc.; 31 C.J.S. verbo Evidence § 100, pp. 699, 700. A consideration of judicial notice of a similar nature is found in Wittenberg v. Trautman, 3 La.App. 787, citing Jones on Evidence, Volume 1, page 627, and other authorities.
It is obvious that Nargassan's testimony on this point was in error and the effect of this is to leave us in considerable doubt as to the credibility of his testimony, particularly with relation to the issue of visibility.
The effect of our findings as above noted fully justifies the conclusions that the negligence of Nargassan constituted the sole and proximate cause of the accident and that Josey was free from any negligence.
Nevertheless, if there could be any doubt as to our absolute conviction on the above points, we would have no hesitancy in permitting plaintiff's recovery under the doctrine of the last clear chance. According to Nargassan's own testimony, he sat in his automobile and observed the approach of the Josey car for a distance of two hundred and fifty feet, noted its position at least partially in the west lane of the highway, yet made no move to take any action *309 which would have avoided the collision. If the speed of the Josey vehicle be accepted as being sixty-five miles per hour, Nargassan sat, without action, for approximately two and one-half seconds, relying, as he testified, upon his own rights to be in the highway, notwithstanding the fact that he was in the path of an approaching vehicle. His attitude in this respect is reminiscent of the well known epitaph:
"This is the grave of Mike O'Day,
Who died maintaining his right-of-way.
His right was clear, his will was strong,
But he's just as dead as if he'd been wrong."
Additionally, it is appropriate to observe that even with proper allowance for reaction time Nargassan had more than one and one-half seconds within which to move his car forward and entirely out of danger. Under the facts which we have above noted, it would have been necessary for him to move his car only a distance of two or three feet. In such circumstances, we cannot conceive of any question as to his liability under the appropriate application of the doctrine of last clear chance.
Proceeding to a consideration of quantum, the record establishes fixed damages for medical expenses on the part of plaintiff, Josey, in the sum of $638.70 and an additional allowance of the $50 deductible payment for repair of his car. Josey's personal injuries were serious, painful and disabling for a substantial period of time. Plaintiff was twenty-three years of age, married, employed as a draftsman by Sheffield Steel Company in Houston, Texas, but makes no claim for loss of wages because his employer continued his wages during his period of disability. The most serious injury suffered by Josey consisted of a compression fracture of the second lumbar vertebra, accompanied by a fracture of the right pedicle and facet of the said vertebra. He was hospitalized for a period of several days and a full body cast from neck to hips was applied, which was worn for a period of approximately two months, after which a Jewett spine brace was worn for an additional period of several months. According to the undisputed medical testimony, the vertebra will remain permanently compressed, plaintiff will never have a normal back, and as a result he will continue to suffer a degree of pain and a permanent disability of ten to fifteen per cent to his back as a whole.
In making our assessment of damages we wish it understood that the amount allowed the plaintiffs in this and the consolidated cases is not to be considered as approaching what we would ordinarily regard as an adequate award. The policy of liability insurance issued by the defendant, Granite State Fire Insurance Company provides for a maximum coverage within the limits of ten thousand to twenty thousand dollars for personal injuries and five thousand for property damage. It is therefore necessary that the allowance, for personal injuries, made to the three plaintiffs in the consolidated suits arising from this accident, should be apportioned on the basis of the said defendant's maximum liability.
For the reasons assigned the judgment appealed from is annulled, set aside and reversed, and,
It Is Now Ordered, Adjudged and Decreed That there be judgment in favor of the plaintiff, Donald D. Josey, and against the defendant, Granite State Fire Insurance Company, in the full sum of Six Thousand Nine Hundred Eighty-eight Dollars and seventy cents ($6,988.70), together with all costs of court.

Supplemental Opinion on Denial of Rehearing
PER CURIAM.
Attention has been called to the fact that the judgment of the court omitted the allowance *310 of interest. While this oversight is of no material importance, in view of LSA-R.S. 13:4203 providing that legal interest attaches from date of judicial demand on all judgments sounding in damages, ex delicto, which may be rendered by any court, we think it desirable to correct our decree, which may be done without the necessity of granting a rehearing.
Accordingly, It Is Ordered that the judgment awarded in favor of plaintiff shall bear interest at the legal rate from date of judicial demand until paid.