TATE, Judge
(concurring reluctantly).
The writer personally agrees with Judge FRUGÉ’s dissent from the majority’s reversal of the trial court. Nevertheless, the writer concurs in the majority opinion, since it expresses the views of a majority of this court (although not necessarily of this panel) as to the rule set forth by the prior jurisprudence which we must apply in the determination of the plaintiff driver’s contributory negligence. Under such jurisprudence, as interpreted by the majority, the driver’s fault in not seeing the unlighted and unwarned-of train bars his recovery.
I think it is fair, though, to point out that the railroad crossing jurisprudence imposes upon a motorist an artificially high standard of care, utterly divorced from realistic standards of everyday life. Indeed, it is a standard different and more exacting than that applied when a night motorist collides with any other unwarned object on the roadway.
I.
Perhaps we can best illustrate this by a brief discussion of the present facts.
The accident happened at 9:30 at night. The site was on a high-speed four-lane through highway a few miles west of New Iberia. At the place of the accident, the highway speed limit was 65 mph.
The railroad crossing was of a branch line serving a salt mine. Trains used it infrequently, perhaps twice daily, and at irregular hours. The ordinary unlighted “railroad crossing” signs were, obviously insufficient warnings. Not only had the New Iberia Safety Council protested the danger of the crossing due to such inadequate warning, as had the safety officer at a nearby naval base; there had been at least three other night accidents at the crossing within a relatively short time, as well as several other near-accidents.
So hazardous was the crossing, that the railroad company itself had agreed in a letter to the Safety Council, some eighteen months before the present accident, to order its train crews to stop before proceeding across the highway, and to leave burning red flares by the track to warn oncoming highway motor traffic while the train was crossing the main highway.
Under the jury’s finding (evaluating a conflict in the testimony), this necessary warning precaution was not taken on the night of the present accident. For purposes of this appeal, we must consider that the freight train was going across the highway in gross disregard of the railroad’s duty to warn oncoming motor traffic.
The majority, following prior interpretations of the jurisprudence, finds that the motorist was contributorily negligent because he failed to see the railroad in time to avoid crashing into it. To me, this overlooks the circumstances surrounding the present accident.
The present motorist, lawfully approaching on a highway, was not charged with the duty of guarding against a grossly negligent obstruction of the highway in his path, which he had no reason to anticipate. (I should also point out that the branch line *388 train usually passed the crossing from H/2 to 4 hours earlier in the evening than on the night of the accident.)
And what did the present plaintiff motorist reasonably see in fact as he approached the crossing?
Due to the incline of the railroad track and the topography of the highway, the motorist’s headlights shined primarily underneath the railroad cars. The motorist’s line of vision was primarily underneath the railroad cars, and he could see the headlights of oncoming motor traffic approaching him from the opposite direction. In short, due to the construction of the crossing and the lack of any railroad warning, there was created in the motorist a false illusion of safety, as he approached the crossing, that there was only open highway ahead. He reasonably saw only what appeared to be an open roadway ahead, although it was in fact obstructed.
It is to be remembered that the defendant has the burden of proving contributory negligence. Contributory negligence is conduct which involves an undue risk of reasonably foreseeable harm to oneself. See, e. g., Sloan v. Flack, La.App. 3 Cir., 150 So.2d 646.
In my personal opinion, if considered as a matter of fact and not of book-law, it was within the province of the jury to determine that the railroad had not borne its burden of proving that the plaintiff motorist was contributorily negligent so as to bar his recovery.
After all, the motorist had a right to be driving on the highway at the place and speed he was. He was using reasonably careful observation of the road ahead, which would have revealed to him the railroad if he had been alerted by the required warning flares of the otherwise unforeseeable obstruction of the highway. To the eye of ordinary observation, the highway ahead of him seemed open and clear in the darkness ahead.
II.
The recent jurisprudence indicates, in my opinion, that the plaintiff would not have been held contributorily negligent under similar circumstances if he had run into any unlighted obstruction to highway travel other than a railroad.
The more recent decisions of our Supreme Court can probably be characterized fairly as holding that a night motorist is not necessarily contributorily negligent for failing to observe an unlighted highway hazard negligently left obstructing the passage of traffic on a through highway. Suire v. Winters, 233 La. 585, 97 So.2d 404; Vowell v. Manufacturers Casualty Co., 229 La. 798, 86 So.2d 909; Dodge v. Bituminous Casualty Co., 214 La. 1031, 39 So.2d 720. “It is a well-established rule that persons using a public street which is in constant use and when their attention has not been called to any obstructions or perils thereon, have a right to presume and to act on the presumption that the way is reasonably safe for ordinary traffic.” Snodgrass v. Centanni, 229 La. 915, 87 So.2d 127, 130.
Nevertheless, under the railroad jurisprudence relied upon by the majority, if a night motorist runs into an unwarned and unlighted railroad, it is often held, without more, that the motorist is contributorily negligent for failing to see the train, although such train might be unwarned and might be as obscure in the darkness ahead as a parked truck or other negligent obstruction.
Actually, this latter sort of rule formerly also applied to non-railroad night automobile accidents. Up to two or three decades ago, it was held as a matter of law, justifying dismissal upon an exception of no cause of action, that the night driver was contributorily negligent for striking- a highway obstruction because “the driver of an automobile is guilty of negligence in driving at a rate of speed greater than that in which he could stop within the range of his vision,” Louisiana Power & *389 Light Co. v. Saia, 188 La. 358, 177 So. 238, 239.
However, by the landmark case of Gaiennie v. Cooperative Produce Co., 196 La. 417, 199 So. 377, with the late great Justice Ponder as the organ of the court, our Supreme Court realistically re-evaluated its former mechanical and unrealistic rule. In that case, the court held that, under circumstances so justifying it, a motorist proceeding with usual care on a through highway might not be contributorily negligent for failing to perceive and hence running into an obscure highway obstruction negligently placed on the highway in his path ahead, when surrounding circumstances such as distracting traffic reasonably explained the motorist’s failure to notice the obscure obstruction ahead in time to avoid the collision.
Following Gaiennie, the more modern and more realistic standard of care developed as applicable to a night motorist, as enunciated by the later Supreme Court decisions above-cited. See also Professor Wex Malone’s comments on the erosion of the “assured clear distance” rule in the annual symposiums on the work of our state supreme court at 19 La.Law Rev. 338 (1959), 18 La.Law Rev. 68 (1957), and 17 La.Law Rev. 346-348 (1957).
III.
The railroad-crossing law is still in a pre-Gaiennie stage. Sooner or later, it seems to me, the decisions concerning the contributory negligence of a night motorist in a railroad crossing accident, will have to be re-evaluated in the light of modern traffic conditions, just as similar non-railroad decisions were by Gaiennie and the post-Gaiennie jurisprudence.
This railroad-crossing jurisprudence is founded upon older cases based upon the traffic conditions of the day in which they were decided — gravel roads, much slower motor vehicle speeds, more frequent and more foreseeable railroad traffic.
Much different present-day circumstances surround the present railroad-crossing accident. We are here concerned with a modern driver proceeding on a high-speed four-lane through-highway designed to facilitate the quick passage of high-powered motor vehicle traffic. We are here dealing with a crossing of such a highway by a minor branch line of a railroad, used by trains only on infrequent and irregular occasions.
Under these circumstances, it seems to me, a railroad has an even greater duty to safeguard by adequate warning the favored automobile traffic, especially since such a really unreasonably great and readily foreseeable hazard is caused to highway traffic. Correspondingly, the motorist traveling on such a highway has a relatively great right to presume that there will be no unwarned obstruction to the passage of high-speed traffic. Through-highway traffic should not be required to anticipate that an obscure and insignificant branch crossing will be used at night by the railroad without alerting and lighted warning signs; so unforeseeable is it that a railroad would cause such extreme and certain hazard to the favored through-traffic on the highway.
Without such required warnings, a failure by the night motorist to observe a non-lighted and unwarned obstruction of a through-highway, should not be held to be contributory negligence which is a proximate cause of the accident, whether the obstruction results from a train or from any other unlighted hazard placed across the lane of high-speed travel. In such circumstances, taking a realistic view, the accident is primarily caused through the gross negligence of the railroad in obstructing traffic without warning.
In the present case, for perhaps twenty-three hours and fifty minutes of each day, the present motorist’s speed and observation was sufficient to warn him of any reasonably foreseeable obstruction to his travel. Realistically, how can it be said that *390 this otherwise reasonably prudent observation and control by the motorist, is suddenly made insufficient, in the other ten minutes of the day, because of the railroad’s converting the crossing into a death-dealing and man-crippling trap, through its gross negligence in failing to provide sufficient warning to alert approaching highway traffic?
In perhaps no class of cases are there more reversals by appellate courts of trial-jury determinations than in railroad-crossing accidents. In these, the juries quite frequently determine that the approaching motorist has used the care reasonably required by present day circumstances. The subsequent appellate reversals on the ground of the motorist’s contributory negligence, it seems to me, stem from the appellate courts’ reliance upon decisions which supply a standard of care unrealistically based upon conditions of two or three decades ago rather than upon those of today.
The standard of duty of a reasonably prudent person using ordinary care should be drawn from life, not from books. As traffic conditions change with the decades, what constitutes the reasonable care and lookout required of a motorist under the circumstances must vary with the actual facts faced by the motorist; not determined by artificial rules not based on everyday life, but instead on the entirely different circumstances of horse-and-buggy or Model-T times.
Our railroad-crossing law awaits a new Gaiennie decision to let the fresh air of today into the appellate treatment of the subject. Since this court’s decision in the present case will not fulfill this function, I therefore will concur with the majority opinion herein as representing probably the preponderant judicial interpretation of our railroad-crossing jurisprudence, even though I feel that such interpretation is wrong and must at some time be realistically re-evaluated in the light of modern traffic conditions.