LOTTINGER, Judge.
This appeal, taken by the defendants from an adverse judgment of the Lower Court, presents a factual issue which was resolved by the Lower Court as follows:
“The plaintiff Oliver Prejeant brought this action against Saia Motor Freight Lines, the owner and operator of a tractor-trailer truck, driven by Iieze-lciel Trigg, and Allstate Insurance Company, for personal injury and property damage resulting from‘a. collision between the said truck and a 1959 Chevrolet sedan driven by the plaintiff.
“Among the undisputed facts are that Trigg left New Orleans between 1:00 and 1:30 A.M. pn February 4, 1961, and proceeded westerly along U. S. 90 to a point about 4 miles e'ast of Raceland, where he stopped in his .own traffic lane and ‘just fell asleep’ on the seat. 3n the cab of the truck, where he so remained more than three hours (as admitted by counsel for defendant— TR-3). The truck lights were left burning (testimony of truck driver TR-5), and no flares, reflectors or other warning devices were set out, as required by law.
“The state Trooper testified (TR-36) that at that point the highway is a two lane highway that varies in width from about 18l!4 feet to 20 feet; and he described the shoulders as about l.j£ feet wide on each side of the highway and ‘very steep’. The photographs introduced as exhibits D-5, etc., indicate that the width of the shoulders also varies as does the blacktop pavement, and that even at their maximum widths they are much too narrow to provide parking or to permit passage off the paved surface. At the locus of the accident the road surface is ‘blacktopped’, the highway is straight and level and without curves, and the weather was dry and clear.
“The plaintiff, 56 years of age, left his home in New Orleans at about 4:00 or 4:15 A.M. and was proceeding westerly on U. S. 90 intent upon going to Labadieville on Bayou Lafourche to go hunting as he customarily did. He eventually reached the place where the Saia truck was stopped in the highway, where he saw the truck ahead, but became aware that the truck was stopped too late to avoid running into the rear end of the truck, with resulting injury to himself and damage to his car.
“The State Trooper approximated the time of the accident at. 5:40 A.M., which is before dawn at that time of the year. He arrived at the scene at about 6:05 A.M. at which time the Trooper was informed that the plaintiff had been .taken to St. Anne Hospital in Raceland, and the ‘driver of the truck could not be found’. About twenty minutes after his arrival, the Trooper got a photographer and took picture, ‘and we decided to move the vehicle’ (TR-33), The Trooper then made an-' other search for the truck driver, who' was eventually found asleep on the front seat of the truck. The Trooper stated ‘when I woke him up and he' got out of the truck he was groggy like a man who just woke up. He wanted to know what happened, what was the matter, and what was I shaking him for * * * It is evident that the truck driver must have been found after 6:30 A.M., and that he must have slept through the accident and the subsequent removal of the Prejeant car ‘from underneath’ the rear end of the truck, without ever having been aware of what had happened.
*863 “The plaintiff estimated that he had been traveling at a speed between 55 and 58 miles an hour, while the Trooper estimated his speed at about 60 miles an hour. It is our belief that the plaintiff could not have been traveling at any greater speed or else the damages to the Prejeant car would have been much more severe than as shown in the exhibits introduced in the record.
“There can be no question as to the gross and culpable negligence of the driver of the truck in stopping his vehicle in his traffic lane on a main traffic artery consisting of only two lanes with very narrow shoulders, without displaying any warning signs. Indeed, he was charged with aggravated obstruction of the highway.
“The only question is whether the plaintiff was negligent and, if so, whether such negligence was a proximate cause of the accident.
“The investigating State Trooper stated that he saw the plaintiff in the hospital and that plaintiff had stated that he saw the truck 150 feet away. The Trooper also testified that he found 105 feet of skid marks and that they were in the right traffic lane running from the shoulder of the road to the center line thereof, as shown in the traffic report introduced in evidence as P-6.
“The plaintiff testified that ‘before I got to the truck I seen it from a good distance’ (TR-8). Later in his testimony he mentions the distance of 2 or 3 acres or arpents, estimated to be a distance of about 600 feet. The Trooper testified that plaintiff stated to him in the hospital that he had seen the truck 150 feet away. The defendant contends that plaintiff was traveling at an excessive rate of speed, that he had not kept a proper lookout, and that such negligence was the proximate cause of the accident.
“While the foregoing distances vary, we take cognizance of the fact that few people are able to estimate distances with any degree of accuracy, and that the estimation of distances is much more difficult at night than in the day time. We believe that we can better reconstruct the scene on the basis of established facts. The undisputed facts are that the truck was parked squarely in the traffic lane in which plaintiff was approaching; that all the truck lights were burning, but that no flares or other warning devices were set out as required by law; that plaintiff was approaching at a legal speed at about 60 miles per hour; and that the Trooper found 105 feet of skid marks leading to the point of impact between the car and truck. The Drivers Guide issued by the Department of Public Safety of the State of Louisiana shows that at a speed of 60 miles per hour, the traveling speed is 88 feet per second, the thinking or reaction distance is 66 feet (based upon the average reaction time of three quarters of a second, which is the lapse of time from the moment of apprehension of danger ahead and the removal of the foot from the accelerator and its application to the brake before braking can become effective), a braking distance of 185 feet, and a total stopping distance of 251 feet. By adding the reaction distance of 66 feet to the skid marks of 105 feet, we find a distance of 171 feet, which was quite clearly the moment and point when plaintiff became apprehensive of danger ahead.
“We believe the rule to apply in this case is that established in Suire v. Winters, 233 La. 585, 97 So.2d 404, as follows:
“ ‘In determining whether plaintiff was contributorily negligent in failing to observe a stationary vehicle obstructing the highway ahead, no-hard and fast rule can be laid down, *864 but the surrounding circumstances and facts bearing on this particular case necessarily must be considered. The duty to use reasonable care for the safety of other places the operator of a motor vehicle under continuing duty to keep a proper lookout for other vehicles which may be properly parked along the road is required by statute or dictated prudence. However, although it is the duty of a motorist to have his car under such control that he can bring his vehicle to a stop within his range of vision, the standard the law gives us to apply is that to be exercised by a reasonable prudent motorist under a given set of facts and circumstances then prevailing and not that exercised by imaginary ideal motorist.’
"In this case Prejeant was proceeding at a legal speed on a straight stretch of highway and he was approaching a lighted truck directly ahead in his traffic lane, with no warning or signal of any kind to indicate that the truck was not in motion. In the absence of such warning, we believe he was entitled to assume that the truck was in motion. Experience shows that not only is it difficult, if not impossible, to judge the speed of a vehicle ahead under the most favorable circumstances, but the difficulty is even more pronounced at night when there is no visible background against which to view any movement. That is undoubtedly •the reason why the law requires the placing of warning devices in the highway.
“We believe the following to be a reasonable conclusion to draw from the testimony. The plaintiff first saw the truck ‘a good distance’ ahead. Then he evidently focused his attention upon it when he was about 600 feet away. Thereafter, he traveled about 5 seconds or less at a rate of 88 feet per second or a total distance of 440 feet or less, when he finally became apprehensive of danger ahead at a point 171 feet away, as shown hereinabove; there was then the lapse of reaction time for a distance of 66 feet; and, thereafter, the skid marks of 105 feet to the point of impact
“Since plaintiff could reasonably assume that the vehicle ahead was in motion, we cannot find that his actions, as indicated by the sequence of events, were unreasonable. Nor can we find that such actions were negligence that constituted the primary cause of the accident. It is our firm conviction that the gross, culpable and flagrant negligence of the truck driver in wanton disregard of the safety of others and of all regulations, was the sole and proximate cause of the accident.
* * * * * *
“Damages were established in the sum of $1,200.00 for the loss of plaintiff’s car; hospital and medical bills in the sum of $1,088.90; and loss of wages for 8 months in the sum of $3,000.00. For serious injury to the right arm requiring surgical procedure and 16 days of hospitalization and resulting in permanent disability estimated from 15% to 30%, deep laceration of the right ear, for bruises and contusions and for pain and suffering; for all of these things damages in the sum of $15,000.00.
“There should be judgment accordingly.”
Defendant argues in this court that the truck was visible from a one-half mile distance because of the reflection sign which was on the back and the failure of the plaintiff to timely see the truck or to see the sign was a proximate cause of the accident or in the alternative, constituted contributory negligence barring plaintiff’s recovery. Plaintiff testified that he saw the truck a good distance ahead. As stated *865 hereinabove when he finally became apprehensive of danger ahead (a parked truck on the highway) he was at a point of about 171 feet away which was too late. Plaintiff had the right to assume that the truck ahead was in motion and we cannot find his actions unreasonable under the circumstances. A careful review of the record reveals that the findings of the Lower Court with respect to liability are manifestly correct. We find no abuse of discretion with regard to quantum and the judgment appealed from is, accordingly, affirmed.
Judgment affirmed.