LANDRY, Judge.
Plaintiff, Dorothy Sailor, instituted the present action individually and on behalf of her thirteen year old minor son, Warren L. Brandon, asking damages of defendant Milton K. Mencer in compensation for personal injuries sustained by said minor and medical expense incurred by plaintiff in treatment thereof, said injuries resulting from a collision between defendant’s automobile and a bicycle being ridden by young Brandon. The learned trial court rejected plaintiff’s demands hence this appeal.
The accident giving rise to this lawsuit occurred between 4:30 and S :00 o’clock P.M., on the afternoon of November 8, 1962, at the intersection of Scenic Highway and Snipe Street in the City of Baton Rouge. At the scene of the accident Scenic Highway, one of the principal north-south traffic arteries in the City, consists of four traffic lanes (two each for northbound and southbound traffic) separated by a raised narrow neutral ground the precise nature and character of which is not made entirely clear by the record. Snipe Street, an inferior two-lane street, runs in an easterly direction and forms a T intersection with Scenic Highway from the east inasmuch as it does not continue westerly beyond Scenic Highway.
We believe narration of certain undisputed physical aspects of the intersection in question and the area immediately adjacent thereto as well as conditions and circumstances prevailing at the time of the accident will facilitate a clear understanding of the issues presented by this appeal.
Lying immediately to the south of Snipe Street is Fairchild Street which latter street is just north of Curtis Street. Both Fair-child and Curtis Streets also form T intersections with Scenic Highway from the east as does Snipe Street. One block north of Snipe Street is situated an oblique intersection or junction between Scenic Highway (which continues in a northerly direction) and Louisiana Highway 19 (known as the Zachary Road) which branches off from Scenic Highway to the right in a more or less northeasterly direction. This intersection is controlled by a signal light. One block north of its junction with Louisiana 19, Scenic Highway is intersected by Swan Street which continues westerly beyond Scenic Highway. Traffic at this intersection is also controlled by an electric semaphore signal. There are no signal lights, however, at the intersections of Snipe, Fair-child and Curtis Streets and Scenic Highway. On the southeast comer of the intersection of Snipe Street and Scenic Highway is situated a gas station. The locus of the accident is in a heavily industrial section of the city and the accident occurred at a time when traffic was extremely congested on Scenic Highway.
At the time of the accident, traffic in the outside or right northbound lane of Scenic Highway was stopped at the traffic light *273 waiting to make a right oblique turn onto the Zachery Highway, said line of stopped vehicles extending back southerly from the traffic light to an undetermined point south of Snipe Street. One or two cars were stopped in the left or inside northbound lane of Scenic at the light.
Although there is some controversy with respect to whether Snipe Street was completely blocked by the cars stopped in the right or outside northbound lane of Scenic Highway, it appears the intersection was partially impeded but that a space of eight to ten feet had been left open by waiting motorists in deference to traffic proceeding westerly on Snipe Street and desiring to enter Scenic Highway.
Plaintiff maintains the intersection in question was completely open and young Brandon, traveling westerly on Snipe Street, passed between a vehicle stopped immediately to the north of Snipe Street and another stopped at approximately the south parallel of Snipe, looked southerly to observe northbound traffic in the inside lane of Scenic and noting no traffic in view, proceeded to cross the inside lane of travel when he was struck by defendant’s vehicle being driven northerly in the left or inside lane.
On the other hand, defendant maintains the intersection was partially blocked and the lad did not enter Scenic Highway at the intersection but entered south thereof by passing between the vehicle stopped at or near the south parallel of Snipe and another vehicle immediately behind.
Succinctly stated, appellants maintain defendant was negligent in traveling at an excessive rate of speed, failing to maintain a proper lookout, improperly passing a vehicle at an intersection and failing to anticipate the presence of motorists, pedestrians or cyclists in the intersection under the circumstances.
Conversely, appellee contends he was free of any negligence whatsoever and the accident occurred solely because of the negligence of young Brandon. The trial court resolved the controversy by concluding ap-pellee was free of fault.
In substance the Brandon youth testified he entered Scenic Highway at the intersection which was unobstructed, the motorists waiting in the outside lane having thoughtfully left the intersection clear for motorists proceeding westerly on Snipe Street. The lad further stated he entered the intersection by passing in front of a vehicle stopped about opposite the south parallel of Snipe Street. He looked to the south and observing no traffic proceeding northerly in the inside northbound lane started to cross the inside lane when the front wheel of his bicycle was struck by the right front of defendant’s vehicle.
Defendant testified in essence that he was proceeding northerly on Scenic Highway in the right or outside northbound lane until he reached a point approximately 350 feet from the intersection of Snipe Street. Noting traffic stopped in the right or outside lane and observing the inside lane free of traffic except for one or two cars stopped at the traffic light some two blocks ahead, he swung into the inside lane because he intended to turn left at Swan Street. He was proceeding in the inside lane at a speed estimated at between 20 and 25 miles per hour and, as he approached the vehicle stopped in the outside lane at or near the south parallel of Snipe Street, he observed the Brandon lad about to enter the inside lane about twenty feet south of the intersection by passing to the rear of said stopped vehicle and between it and another automobile stopped immediately behind. Appellee instantly applied his brakes and stopped within a short distance, leaving what he estimated (without measurement) to be skid marks of approximately two feet inasmuch as his brakes upon application gave á mere “squeak” before his vehicle came to a full stop. According to Mencer his view of the boy was obstructed by vehicles stopped in the outside lane and the impact occurred just inside the left or westernmost northbound lane of Scenic Highway.
*274 Unquestionably the line of stopped traffic in the outside lane of Scenic Highway obstructed the view of defendant as well as that of the young boy. Defendant observed the bicycle emerge from the line of stopped traffic mere seconds before the impact. Notwithstanding his instant application of brakes, the position and proximity of the automobile and bicycle were such that collision was inevitable. Assuming defendant had sufficient time to change the course of his vehicle upon observing the cyclist, such possibility was not open to him because of the line of cars on his right and the presence of an elevated neutral ground to his left.
Whether the boy crossed at the intersection or to the south thereof is a violently disputed issue in this case and admittedly could materially affect the outcome of this controversy. Assuming the position most favorable to appellants, namely, that the cyclist crossed at the intersection of Snipe Street through an opening left by the line of traffic, we shall consider the argument that under such circumstances defendant is held to a greater degree of care because of the rule that a motorist who knows or should know of the presence of children ir. a given vicinity must exercise extraordinary care and vigilance.
While the rule thus ' advocated by esteemed counsel for appellant is no doubt well established, its application to the case at bar is patently beyond reason. To hold such a rule of care apropos the case at bar would obviously lead to the imposition of an illogical and unconscionable burden upon motorists.
As previously shown, Scenic Highway is a main artery of north-south traffic through the capital city of this state. The locus of the accident is a heavily industrialized area and the accident occurred during peak traffic hours.
The rule of special care advocated by esteemed counsel for appellants applies only when the motorist has knowledge of the reasonable expectance of the presence of children. In Keller v. Stevenson, La.App., 6 So. 2d 569, the driver involved had special knowledge regarding the presence of children near the accident site. In Peperone v. Lee, La.App., 160 So. 467 and Doyle v. Nelson, La.App., 11 So.2d 645, the. motorist could see children standing or playing on or beside the road. In Davis v. Surebest Bakery, La.App., 38 So.2d 624, defendant driver saw a school bus and the child which had just descended therefrom.
While there are numerous other circumstances wherein a motorist may be held to anticipate the presence of children, the instant case does not justify application of the rule advanced by able counsel for appellants.
As already stated, the area in question was industrial in character, traffic on the main thoroughfare was heavily congested and so far as the record shows there was no residence in the vicinity of the accident. Had the accident occurred in a school zone, residential district, or near a public park or playground, the degree of care incumbent upon defendant to anticipate the presence of children would be entirely different. In the instant case, however, appellee was under no duty to anticipate the presence of a child attempting to cross Scenic Highway on a bicycle. To hold otherwise is to impose upon motorists the constant, never ending duty to anticipate the presence of children irrespective of attending circumstances. Such a rule, we believe to be unreasonable and contrary to established jurisprudence.
Learned counsel for appellants further argues, citing Nicolle v. Roberts, La.App., 117 So.2d 623 and LSA-R.S. 32:233, it is negligence per se for a motorist to overtake a vehicle at an intersection. Although the Nicolle case, supra, is easily distinguishable from the case at bar, it is unnecessary, for purposes of the present discussion, to detail its distinguishing features. It suffices to note that in the Nicolle case, supra, the statute relied on by plaintiff therein was the law prior to adoption of the new Highway Regulatory Act passed in 1962, which became effective prior to the date of the accident involved in this case. *275 The provision of the present act corresponding to the law cited in the Nicolle case, supra, is now LSA-R.S. 32:76, but it is to be further noted sub-section B thereof expressly exempts multiple-lane highways from the provisions of the currently applicable statute. The Nicolle case held that the then prevailing law prohibiting the passing of vehicles at a highway intersection applied also to city streets. The rule therein enunciated in this latter regard appears eminently well founded. We concur therein and detect no reason why the new law permitting passing at intersections on multiple-lane highways should not likewise be held applicable to municipal streets. It is common knowledge that the volume of traffic upon our public streets and highways is ever increasing and congestion of vehicles is a problem constantly facing those authorities concerned and charged with the task of designing and constructing streets and highways and controlling the flow of traffic. In the interest of saving countless man hours otherwise lost in delayed or slowed traffic, it is imperative that every reasonable effort be made to facilitate and expedite the flow and movement of traffic whenever possible consistently with principles of safety.
Able counsel for appellants also points out that when a motorist changes from one traffic lane into another, he must make certain the maneuver can be made in safety both to himself and other persons on the highway. This rule, of course, is applicable to the case at bar but its pertinence can be of little comfort to appellants inasmuch as we find no violation of the rule by defendant herein.
In the instant matter, appellee changed from the right or outside lane in which traffic was stopped to make a right turn. He entered the left or inside lane which was free of traffic all the way to the signal light approximately two blocks ahead. Under such circumstances, defendant, proceeding in an orderly manner at a. lawful rate of speed was entitled to proceed therein to the point where traffic was required to stop for the signal light. His entering and proceeding in the left lane did not endanger or affect the progress or movement of any vehicle standing (or moving) to his right. He proceeded uneventfully in the left lane until confronted with the Brandon youth’s attempt to cross Scenic Highway, an event he was not required to anticipate or foresee. Moreover, defendant’s maneuver of changing lanes bore no causal relation whatsoever to the accident inasmuch as the collision would have occurred in the same manner even though defendant had initially been traveling in the left lane as he had a right to do. Green v. Lothery, La.App., 126 So.2d 9; Tate v. Norfolk and Dedham Mutual Fire Ins. Co., La.App., 153 So.2d 495 and Stewart v. Wood, La.App., 153 So.2d 497.
While the facts in Green v. Lothery, supra, are quite similar to those in the case at bar we note however an important distinction. In the cited case, both streets, intersecting at a 45 degree angle, were major thoroughfares leading to the same point. In the present case, Snipe Street is an inferior roadway forming a T-intersection with a four-lane main traffic artery. Moreover, in the Green case, supra, defendant driver was “rushing”; he could not hear the warning signal, and the court found he virtually admitted liability at the accident scene.
The Tate and Stewart cases, supra, are companion suits. Therein the driver of the overtaking vehicle failed to notice two young boys who had entered the two-lane highway from a private lane. The driver of the second vehicle observed the cyclists about 300 feet away while the first vehicle was in the act of passing. The slower vehicle stopped approximately 50 feet from the point of impact while the cast defendant “did not observe the speed of his vehicle, and took no reasonable precautions to avoid striking the bicycle.”
In the case before us, defendant motorist driving on a favored major thoroughfare did not and indeed could not see the approaching cyclist. Defendant herein was under no duty to stop or anticipate that any *276 •motorist, pedestrian or cyclist would attempt to cross Scenic Highway without yielding to traffic on the superior street. Insofar as •defendant is concerned we find the accident -unavoidable.
Astute counsel for appellant does not in this court seriously urge the contention •defendant was speeding. Indeed, our consideration of the record convinces us defendant was traveling at a lawful and reasonable rate of speed. Not only did plaintiffs fail to substantiate this charge, but also the record establishes the contrary as appears from the fact defendant stopped almost immediately and the collision resulted in only slight injury to the cyclist and minimum damage to the bicycle.
Accordingly, the judgment of the trial court is affirmed at appellants’ cost.
Affirmed.