SAVOY, Judge.
This is a suit in tort by plaintiff, as administrator of the estate of his minor daughter, Sybil Ann Siayter, arising out of an automobile accident which occurred October 19, 1963, on U. S. Highway 167 about four miles south of Bentley, in Grant Parish. Miss Siayter was a passenger in a 1962 model Volkswagen automobile which was being driven by Freddie Chandler at the time of the accident. The automobile was owned by Freddie’s father, Lavern Chandler, and was insured by the defendant. Miss Siayter was injured when the automobile ran off the left side of the highway and into a tree or trees. Plaintiff alleged that the accident was occasioned by the negligence of Freddie Chandler in his failure to maintain proper control of the vehicle which he was operating, failure to maintain a proper lookout, and failure to keep the vehicle which he was operating in the proper lane of traffic.
The defendant filed an answer wherein insurance coverage and the basic facts of the accident were admitted, but any negligence on the part of Freddie Chandler was denied. It was alleged that for reasons beyond his control and unknown to him, the car which Freddie Chandler was driving started steering towards the left side of the highway, and that notwithstanding his ef *544 forts to pull it back onto the highway, the car ran off the road on the left side of the highway, where it struck a tree and caused injury to Sybil Ann Slayter. In the alternative, it is alleged that Miss Slay-ter was guilty of negligence in that she was responsible for any acts of negligence of Freddie Chandler, that she caused Freddie Chandler to be distracted or inattentive to his driving, and further, that she failed and neglected to protest the alleged negligent acts of Freddie Chandler which were enumerated in plaintiff’s petition.
The district court rendered judgment for plaintiff for the face amount of the insurance policy of $5,000.00. From this judgment the defendant has appealed to this Court.
The defendant maintains that the plaintiff failed to establish any negligence on the part of Freddie Chandler. Instead, it is contended that the facts of this case show the accident was unavoidable, having been caused by an unexpected locking of the steering mechanism of the automobile. Alternatively, it is urged that the award to plaintiff was excessive and should be reduced.
Plaintiff maintains the evidence shows that Freddie Chandler was negligent, that this negligence was the proximate cause of the accident in which Miss Slayter sustained injuries, that the quantum awarded by the district court was not excessive, and accordingly, the judgment of the district court should be upheld..
The record shows that the accident occurred October 19, 1963, at approximately 9:30 P.M. on U. S. Highway 167 about four miles south of Bentley, in Grant Parish. At the time and place of the accident, the highway was straight, level and dry. Freddie Chandler, who was then 15 years of age, and Sybil Ann Slayter, who was then 16 years of age, were on a date, and Freddie Chandler was driving his father’s 1962 Volkswagen automobile, with Miss .'Slayter seated in the right front seat. They went from Miss Slayter’s home in Grant Parish to Alexandria, Louisiana, where they went bowling. They stopped at a drive-in ice cream shop, then stopped by a skating rink, and were returning to the home of Miss Slayter, driving north on U. S. Highway 167 at the time of the accident. The car veered to the left off the road, crossed a ditch, and ran into a tree or trees on the west side of the highway. Miss Slayter was pinned in the automobile and received serious injuries. She was taken by ambulance from the scene of the accident to the Baptist Hospital in Alexandria.
Miss Slayter testified she did not remember anything about the accident except that she saw some trees coming at her. She testified she suffered a loss of memory and did not remember hitting the trees or hearing any noise, and that except for remembering the flash of trees, her mind was a blank from the time they left the skating rink some seven miles from the point of the accident until the time she “came to” immediately following the accident.
Freddie Chandler testified that he was driving normally and noticed the car going to the left, that he “tried to turn it back and it didn’t turn.” He stated he applied the brakes about the time the car left the pavement.
There were no other eye witnesses to the accident. State Trooper James R. Collins arrived at the scene of the accident in a short time. He testified that Freddie Chandler “said he just lost control of it (the car) and was unable to straighten it up and it left the road and hit the tree.” Trooper Collins testified he could find no reason .why the car left the road, and concluded from the statement of Freddie Chandler that the cause of the accident was the inattention of the driver. Trooper Collins testified that there were no marks on the highway which indicated that there was no braking of the car or tire blowout. He testified further that there were tracks *545 on the ground left by the car which went from the edge of the pavement continuously across until the car struck the tree. He testified that Freddie Chandler did not say anything went wrong with the car to have caused the accident, and for this reason, he did not check the steering mechanism of the car to see if it was defective.
After due consideration of this case, we find the record substantiates the holding of the district court that the cause of the accident was the negligence of Freddie Chandler in failing to keep proper control of the vehicle he was driving.
The evidence does not establish a failure of the steering mechanism of the car as contended by the defendant. Although Chandler testified he believed something happened to the car to cause it to get away from him, he was not certain as to what made it go to the left, and he could not say definitely that there was a mechanical failure in the steering mechanism of the car at the time of the accident. When he gave his statement to Trooper Collins immediately following the accident, Chandler said nothing to indicate that anything went wrong with the car to cause the accident. Chandler simply stated that he lost control of the automobile. Also, although the automobile was examined by agents of the defendant after the wreck, no evidence was introduced to show any malfunction of the steering mechanism.
As driver of the automobile, Chandler was charged with the responsibility of its safe operation. There were no defects in the vehicle, or in the roadway, which could account for Chandler allowing the vehicle to run off the left side of the road. Nor was any other explanation offered. The road was level, straight and dry. No evidence was introduced to indicate contributory negligence on the part of Miss Slayter. The probable cause of the accident, therefore, was obviously the lack of proper control by Chandler as the operator of the vehicle.
Although the defendant questions the loss of memory by Miss Slayter, the district court accepted her testimony that she was unable to recall any facts which occurred just prior to the accident, except recalling some trees coming at her. The district court had the opportunity to observe Miss Slayter, Freddie Chandler, and the other witnesses, and was in a better position to judge their credibility than we are from a printed record. Under the facts and circumstances of this case, we find no manifest error in the holdings by the district court.
We shall now consider the issue of quantum
Dr. Paul M. Davis, Jr., an orthopedic surgeon of Alexandria, saw Miss Slayter in the emergency room of the Baptist Hospital in Alexandria. He diagnosed her injuries as a fracture of the right femur, a sprain of the right wrist, and lacerations of the forehead. He called in a general practitioner in Alexandria, Dr. M. E. Gutierrez to treat her for the lacerations of her head and to check for evidence of internal injuries. Dr. Davis placed her in traction until October 28, 1963, at which time he performed surgery, in the nature of an open reduction of the right femur and the insertion of an in-tramedullary nail which extended from her. knee to her hip. She was given at least one blood transfusion. She remained in the hospital from October 19, 1963, until November 6, 1963. The right wrist healed without trouble. On November 11, 1963, the sutures from the hip and thigh were removed, and the wounds appeared to be healing well. Dr. Davis prescribed crutches on December 11, 1963, to allow her to put some weight on the foot. He testified that by January 15, 1964, Miss Slayter was walking without a limp. Miss Slayter entered the hospital for three days beginning August 28, 1964, for surgery for the removal of the pin. The sutures from this wound were removed on September 10, 1964. Dr. Davis testified the bone in her *546 leg had healed well, and the only permanent disability that she would have would be the scarring. This would give her some impairment. There is a scar approximately eight to nine inches in length on her right thigh, and also two scars on her buttocks of approximately an inch and one-half in length, where the nail was inserted and removed. The scar on the leg would be visible when she wore shorts or a bathing suit. Dr. Davis testified that Miss Slayter went through a good bit of pain, and that at the time of the first surgery they were not able to sedate her completely because of her head injuries.
Dr. Gutierrez treated Miss Slayter for the lacerations of her forehead. Approximately six sutures were taken to close the larger laceration, which left a stellate shaped or irregular scar. Dr. Gutierrez saw Miss Slayter again on September 8, 1964, at which time she complained of headaches. He diagnosed the headaches as being functional or tension-type headaches, and prescribed a muscle relaxant analgesic. He did not relate her headaches directly to the accident.
Dr. Heinz K. Faludi, a neurological surgeon of Shreveport, Louisiana, examined Miss Slayter on November 6, 1964. He felt that the history of a short period of amnesia would indicate she suffered originally with a cerebral concussion resulting from her head striking and breaking the windshield of the car. He found no pathology from a neurological point of view. He believed the headaches she was having were caused by muscle tension. He felt that since she had lost a considerable amount of time in school, and had to malee up for it, she had been placed under more than an average amount of tension, and that the heavy school schedule was the likely cause of the headaches.
The record shows that Miss Slayter suffered considerable pain from her injuries, the treatments and the operations. The pin placed in her leg protruded in the area of the hip and caused a catching sensation with pain, which was more or less constant, until the pin was removed in August, 1964, approximately one year after the accident. The record shows that Miss Slayter had been quite active in participating in social, recreational and school activities, including basketball, prior to the accident, but since the accident she had become much less active and more withdrawn. It was shown that the accident caused her to be more nervous than previously. The scarring is undoubtedly embarrassing to»this attractive young lady of 16 years of age. The evidence shows that she takes pains to cover the scar on her forehead with cosmetics or by combing her hair over it. This scar is visible although it is not too unsightly.
In the recent case of Boss v. Broussard (La.App., 3 Cir., 1965), 178 So.2d 334, this Court said:
“The recent much discussed cases of Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963) and its progeny, Ballard v. National Indemnity Company of Omaha, Neb., 246 La. 963, 169 So.2d 64 (1964), have established the rale that appellate review of the quantum of damages is confined to determining whether there has been an abuse of the ‘much discretion’ vested in the trial court. The amounts of awards in previous similar cases are relevant only to determine whether there has been an abuse of this discretion.”
Using the Gaspard and Ballard cases, supra, as a guideline, we have reviewed the cases cited to us in the briefs, as well as other cases, involving persons with injuries of a similar nature as those sustained by Miss Slayter. Because of the many variables involved, no two cases are exactly alike, and a certain latitude is given by law to the district court in fixing an award. Considering the severe nature of the injuries which Miss Slayter sustained, the pain involved over a prolonged period of time, and the embarrassment caused by the scarring to this sensitive *547 young lady, we find that the district court did not abuse its discretion in making an award of $5,000.00; and, therefore, we hold that the amount o'f the award is not excessive.
For the reasons assigned, the judgment of the district court is affirmed, and all costs are assessed against the defendant.
Affirmed