195 So.2d 403 (1967)
Mrs. Sophie BRECHTEL, Widow of John P. Brechtel,
v.
GULF STATES ELEVATOR CORPORATION, the Employer's Liability Assurance Corporation Ltd., the Travelers Insurance Company, and the City of New Orleans.
No. 2495.
Court of Appeal of Louisiana, Fourth Circuit.
February 13, 1967.
Rehearing Denied March 6, 1967.
*404 Schoemann, Gomes, Ducote & Collins, Robert A. Collins, New Orleans, and Richard M. Donahue, Metairie, for plaintiff-appellee.
Cronvich, Ciaccio, Wambsgans & Perry and A. W. Wambsgans, Metairie, and Drury & Lozes and Felicien P. Lozes, New Orleans, for defendants-appellants.
Alvin J. Liska, Samuel R. Exnicios, New Orleans, for defendant-appellee.
Before McBRIDE, HALL and JANVIER, JJ.
McBRIDE, Judge.
The widow of John P. Brechtel, plaintiff, recovered judgment against Gulf States Elevator Corporation and its liability insurer, The Employers' Liability Assurance Corporation Ltd., for $12,000, (with interest and for costs which include the fees of four medical expert witnesses), for physical injuries sustained in an accident in an elevator in the City Hall of New Orleans on the afternoon of June 27, 1963; Mrs. Brechtel, an employee of the City, on her alternative demand, also recovered judgment for workmen's compensation against the City of New Orleans at the rate of $25 per week for a period of 100 weeks, plus medical expenses not exceeding $2500. The City was in turn awarded judgment over Gulf States Elevator Corporation and its insurer for the amount of the workmen's compensation and medical expenses for which it is liable unto plaintiff.
Gulf States Elevator Corporation and its insurer appealed from the judgment; Mrs. Brechtel answered the appeal praying that the judgment against appellants be increased to $55,000 and that the judgment against the City of New Orleans for workmen's compensation be amended so as to award compensation at the rate of $35 per week for 400 weeks as for total permanent disability. (See C.C.P. 2133).
Plaintiff, age 46, was employed by the City of New Orleans as a traffic safety and education co-ordinator. On the afternoon of the accident she attempted to enter an elevator in the City Hall at the ninth floor level. The only testimony regarding the accident emanates from plaintiff, who said:
"* * * when the elevator came up, as I went to step into it as the doors opened, the doors opened and they got about this far open (indicating) and I walked in, and as I walked in they did this (demonstrating) and just mashed me and then I started hitting the safety, the rubber safety door and nothing would move. It just kept squeezing me. So I started forcing it with my arms to try to work and wiggle myself out, I mean finally I managed to get part of me that was caught, this whole side out and then my arms got caught in the stuck doors and I pulled them open and got my arms out, and then my dress was caught in it."
The elevator involved can be operated either automatically, that is by the passenger, or manually by an attendant. At the time of the accident it was in automatic operation.
Plaintiff seeks to hold Gulf States Elevator Corporation and its liability insurer in tort for damages for her injuries on the theory that said named defendant was under the duty of maintaining, repairing and servicing the elevators under contract with *405 the City of New Orleans and that the accident occurred through the fault of the employees of Gulf States Elevator Corporation.
The evidence in the case shows that Gulf States Elevator Corporation, under its contract with the City, was bound to regularly and systematically examine the elevator, and adjust, lubricate, repair or replace the machines, motors, generators and controller parts and all necessary accessory equipment, etc. It was testified to by the vice-president of the maintenance company that when a complaint was received about an elevator his firm would dispatch a mechanic to City Hall who would examine the elevator and perform work thereon if necessary. There were no complaints made regarding the doors of the elevator in question during May, June and July, 1963.
It is admitted by counsel for plaintiff that negligence on the part of the agents or employees of Gulf States Elevator Corporation was not proven. We might add that none of the testimony, which is quite voluminous, indicates why the doors of the elevator behaved as testified to by plaintiff and what happened remains a mystery. Plaintiff relies upon proof of negligence through the inference derived from an application of the doctrine of res ipsa loquitor, which doctrine, the trial court held, was available to plaintiff under the facts in the case.
Appellants reject the theory that the res ipsa loquitur doctrine applies and argue that there is no room for its application here because the instrumentality which is said to have caused plaintiff's damages was not under the exclusive control of Gulf States Elevator Corporation.
The elevator involved was designed, manufactured and installed by Westinghouse Electric Company and for several years had been maintained by the manufacturer, later by other maintenance contractors, and lastly by Gulf States Elevator Corporation. The elevator is equipped with numerous safety devices and its controls are located in a room above the top floor of the City Hall which is denominated the "penthouse". Entrance therein is extremely easy to gain. The Vice President of Gulf States Elevator Corporation, who had charge of servicing the elevator involved, testified that on his many visits to the penthouse in maintaining the elevators over the years he never found the door to the room locked. He further stated the controls of the elevators in the penthouse are accessible to anyone entering therein and that employees of the City Hall frequented the penthouse. The testimony also shows that in addition to the elevator equipment the City of New Orleans also has other mechanical contrivances used in connection with the operation of the building, such as blowers, etc., stored in the penthouse. The evidence makes it certain that interference with the controls of the elevator by an employee of the City or an intruder could well be the cause for any malfunction of the elevator doors. The vice president said:
"Q. Now, isn't it possible that if there was a temporary short by someone in the control room that something could happen to this door, make it malfunction?
"A. Oh, yes, that necessarily is. All of the brains of the elevator are up in the penthouse and primarily the malfunctions occur up there."
A review of the testimony adduced by all parties clearly shows that the accident could have occurred as the result of many causes too numerous to detail here and there is nothing whatever showing that any negligence on the part of the employees or agents of Gulf States Elevator Corporation was a contributing cause. Unquestionably, the accident could have been caused through the negligence of third persons. For instance, the elevator doors were designed to reopen when the rubber safety edges thereof come into contact with a passenger or when the passenger's physical presence causes a "break" in what is called the photocell circuit which controls the opening and closing of the doors. It appears that the *406 rubber safety edge on the doors could have been damaged by various happenings. Additionally, the evidence is clear that numerous persons at City Hall, particularly the elevator starters, watchmen, the building engineers and custodians all possessed keys to the photo-cell switch which is located on the bottom of the push-button panel in the elevator.
Res ipsa loquitur is a rule of evidence, the applicability of which is to be determined on the conclusion of the trial. Where the plaintiff cannot be expected to have information as to the causes of the accident, whereas the defendant, on the contrary, must be assumed to be fully informed on the subject, and where the accident is of the kind which ordinarily does not occur when due care has been exercised, the rule of evidence is that the accident speaks for itself, res ipsa loquitur, that is to say, a presumption of negligence arises from the fact of the accident itself. Gerald v. Standard Oil Company, 204 La. 690, 16 So.2d 233.
The effect of the application of the doctrine of res ipsa loquitur is simply to charge defendant with the burden of exculpating himself from the presumption of negligence. Jones v. Shell Petroleum Corporation, 185 La. 1067, 171 So. 447.
The jurisprudence of Louisiana is well settled with regard to the general rules regarding the applicability of the doctrine, one of which is that the agency or instrumentality which causes the injury or damage must have been within defendant's control. Langlinais v. Geophysical Service, Inc., 237 La. 585, 111 So.2d 781, and cases therein cited.
But possession and control are not always essential elements; however, in such case, it is imperative that plaintiff prove freedom from fault on the part of all through whose hands the instrumentality passes. Plunkett v. United Electric Service, 214 La. 145, 36 So.2d 704, 3 A.L.R.2d 1437.
In view of the certainty that the accident involved in this case could have occurred from causes other than negligence on the part of the servants of Gulf States Elevator Corporation the doctrine of res ipsa loquitur is not to be applied. As it has often been stated, the doctrine is not applicable unless the facts leave no room for any different presumption than that the defendant was negligent. Dorman v. T. Smith & Son, La.App., 55 So.2d 587. The reasons for the application of res ipsa loquitur are set forth in the leading case on the subject, Lykiardopoulo v. New Orleans & C. R. Light & Power Co., 127 La. 309, 53 So. 575. The late Court of Appeal for the Parish of Orleans fully discussed the reasons for the doctrine in Horrell v. Gulf & Valley Cotton Oil Co., 15 La.App. 603, 604, 131 So. 709.
Our brothers of the Third Circuit refused to apply the doctrine of res ipsa loquitur in Miller v. Otis Elevator Company, La. App., 154 So.2d 629, which was a case similar in all respects to the instant one. There the plaintiff sustained personal injuries when an elevator came to a sudden stop between floors. His suit was directed at the defendant who was responsible for servicing, maintaining and repairing the elevator. Plaintiff contended that such control over the elevators would make res ipsa loquitur applicable. The court in holding the doctrine inapplicable, said:
"With respect to this appeal, no specific showing of negligence having been made, the question for decision is the applicability of the doctrine of res ipsa loquitur. Plaintiff contends that it should apply; defendant contends that it should not.
* * * * * *
"In the instant case, the evidence establishes that the elevator suddenly stopped because a safety governor had been tripped. It is true the evidence tends to indicate that through some defect this governor mechanism had stopped without cause on several occasions after *407 the present incident, which would tend to indicate that there was some defect in the machinery. However, on the other hand, the evidence also indicates that the governor mechanism was situated in an unlocked elevator control room atop the elevator shaft to which the employees on the construction contract had free access (despite the sign prohibiting the presence of unauthorized personnel in the room). On one occasion, for instance, a paper cup, left by one of these unauthorized entries into the control room, had activated the mechanism.
* * * * * *
"* * * Since such factor outside the control of the defendant could also have caused the present accident, the doctrine of res ipsa loquitur does not apply, Larkin v. State Farm Mutual Auto Insurance Company, 233 La. 544, 97 So. 2d 389."
The authorities cited by plaintiff are not pertinent. In Johnson v. Johness, La.App., 145 So.2d 588, the elevator was in a leased building, and plaintiff who was the employee of the tenant was injured by it. The suit was directed against both the landlord and the tenant; the court held the doctrine of res ipsa loquitur applicable as against the landlord who did not absolve himself from negligence and was held liable, obviously on the theory that the lessor is responsible for damages caused by the defects in the leased premises. The question concerning the court in the instant case was not present.
Otis Elevator Company v. Seale, 5 Cir., 334 F.2d 928, is also distinguishable. The elevator company was the designer, manufacturer, installer and permanent maintainer of the machinery involved. Although the doctrine of res ipsa loquitur was held applicable, there was no discussion by the court whether the elevator company went forward with proof of freedom from negligence, or whether it disavowed exclusive control of the mechanism of the elevator. Whereas, the res ipsa loquitur doctrine cannot be applied herein because a factor not under the control of the defendant could also have been responsible for the accident and as the plaintiff has not produced affirmative proof of any negligent acts of commission or omission on the part of the employees of Gulf States Elevator Corporation, the judgment insofar as it runs in favor of plaintiff and the City of New Orleans against Gulf States Elevator Corporation and its liability insurer is clearly erroneous.
The City of New Orleans did not appeal from the award of workmen's compensation. Plaintiff has contended through her answer to the appeal that the award was erroneous in that she is entitled to compensation benefits for total and permanent disability.
As a result of the injuries allegedly sustained in the accident, plaintiff saw three doctors, namely, McHardy, Reyes and Unkauf. According to the composite testimony of these physicians she sustained a large bruise or hematoma on the right buttock, bruises along her back and arms and right side. Dr. Reyes, a surgeon, incised the hematoma and after the wound had healed there remained a residual of "lumpiness".
Plaintiff maintains that because of constant pain she was unable to carry on her usual occupational duties except from time to time when she made efforts, despite the pain, to return to the job.
Dr. McHardy, who saw plaintiff 74 times, stated that in addition to the above enumerated injuries a pre-existing ulcer was aggravated and that Mrs. Brechtel also became anemic as a result of the trauma received in the accident. The numerous visits which plaintiff made to Dr. McHardy were because of pain she declares she experienced. Dr. McHardy's therapy was pain-killing drugs. It might be mentioned here that about a year before the accident Mrs. Brechtel had one of her lungs removed because of a malignancy.
*408 Not one of the physicians who treated plaintiff would testify that as a result of the accident she was totally and permanently incapacitated from carrying on her usual occupational duties.
To reach the conclusion that Mrs. Brechtel was totally and permanently disabled we would have to accept at full value her testimony that she suffered constant pain sufficient to inhibit the occupational activities on her part. We are not at all satisfied she has proven she was totally and permanently disabled. The trial judge did not believe such permanent disability existed.
Dr. Unkauf's testimony is to the effect that as a result of the elevator accident plaintiff sustained a 10% loss of the use of the whole body and the trial judge based the compensation award as per R.S. 23:1221 (4)(p).
Whatever disability the injuries precipitated would at most be temporary total in nature. Plaintiff seems to have worked intermittently after the accident and a careful study of the record reveals that up to the time of the trial (two years afterward) she lost a total of 186 days from work, or, say, 27 weeks. If the compensation were to be calculated for 27 weeks at the maximum rate of $35 per week the award would have aggregated $945. So it is seen the trial judge allowed compensation as for a 10% loss of the use of a physical function which is greater than would be compensation for temporary disability.
There is nothing before us that would warrant a revision of the award upwards.
For the reasons above assigned those portions of the judgment which run in favor of plaintiff and the City of New Orleans against appellants, Gulf States Elevator Corporation and The Employers' Liability Assurance Corporation Ltd., be and the same are hereby reversed, and the judgment appealed from is amended so as to provide that the demands of plaintiff and the City of New Orleans as against appellants are dismissed with costs, and as thus amended and in all other respects the judgment appealed from is affirmed.
Plaintiff is to pay the costs of this appeal.
Reversed in part, amended and affirmed.