AYRES, Judge.
This action in tort arises out of a motor vehicle collision on the night of April 8, 1968, on Interstate-20 in Shreveport. Involved were a Dodge automobile owned and operated by Phillip J. Leon, insured by the State Farm Mutual Automobile Insurance Company, and a Ford Mustang owned and operated by Lewis Wayne Adams and insured by the Southern Farm Bureau Casualty Insurance Company.
Plaintiffs are Mrs. Patricia O’Reilly Adams and J. J. O’Reilly. The latter appears not only in his individual capacity but as representative of his minor daughter, Rose Marie O’Reilly. Made defendants were Leon, Adams, and the above-named insurers. Mrs. Adams and Miss O’Reilly were guest passengers in the Adams automobile. J. J. O’Reilly, in his individual capacity, seeks to recover damages incurred in the nature of hospital and medical expenses in the treatment of the injuries sustained by his minor daughter. Mrs. Adams likewise seeks damages for the injuries sustained by her. Defendants Leon and his insurer caused Adams and his insurer to be made third-party defendants, from whom they seek to recover damages sustained to Leon’s automobile.
Adams was exonerated from liability and, accordingly, plaintiffs’ demands against him and his insurer were rejected, as were the demands of third-party plaintiffs. Plaintiff J. J. O’Reilly recovered judgment for the amount of his individual claim. There was, however, only a partial recovery on the claims of Rose Marie O’Reilly and of Mrs. Adams. From the judgment, plaintiffs and defendants-third-party plaintiffs appealed.
Negligence charged by plaintiffs to defendant Leon consisted of a failure to maintain a proper lookout, in losing control of his vehicle, a failure to remove it from the traffic lane or take any precaution to warn oncoming traffic, and in leaving his car blocking the roadway. Negligence charged to Adams consisted of a failure to maintain a proper lookout or to keep his vehicle under control, to apply his brakes or to observe the Dodge automobile stopped in the roadway, or to take precautions to avoid the collision. Third-party plaintiffs directed to Adams the same charges of negligence, with the additional charge that he failed to observe warning signals given by Leon or the blinking lights on his car.
Both vehicles were proceeding easterly on Interstate-20, in the nighttime, during a heavy rain, with the Leon vehicle in the lead in the right of the three eastbound traffic lanes. After reaching the crest and while in the act of descending an overpass over Lakeshore Drive, Leon applied his brakes on seeing a car to his right approaching the interstate highway on the entrance ramp. His car skidded, went into a spin, and, on the second round, came to rest when the rear bumper became entangled in a wire fence separating the eastbound and westbound traffic lanes. Through the entanglement, the rear wheels were lifted above the highway surface, with the car facing in a southerly direction across the traffic lanes.
After Leon’s car became entangled in the fence, a passerby drove up, stopped, and conferred with Leon. Leon and the passerby joined efforts in an attempt to extricate the vehicle from the fence. Being unsuccessful, the passerby advised Leon to walk westerly so as to be in position to warn approaching traffic. The passerby left the scene to report the accident and to obtain assistance for Leon. Leon walked along the asphalt shoulder adjoining the inner traffic lane for a distance of approximately 45 feet, where he waved his hand as a warning to approach *633 ing traffic. Adams never saw Leon give any signal.
Adams, some minutes later, was proceeding easterly following another vehicle in the middle traffic lane. On approaching the overpass, Adams moved into the left lane in order to effect a passing movement. On ascending the crest of the overpass, Adams was suddenly confronted with the Leon vehicle stopped in his lane of travel. The car which he had been following was to his right, preventing a maneuver into or beyond the middle lane.
The accident happened suddenly, like a flash, as the Leon vehicle came into view when Adams reached the crest of the overpass. We are impressed there was neither time, distance, nor opportunity for Adams to take any effective evasive action to prevent the collision. Nor was he permitted to steer his vehicle to the right into or beyond the middle travel lane, even had he had time for that maneuver.
Leon testified that the vehicle approaching the entrance to his right was still on the ramp when he lost control of his car; that he anticipated no danger from that car at the time he applied his brakes. Nowhere did he testify that the vehicle on the ramp had anything to do with his own car going into a skid. His testimony was that he merely saw this car out of the corner of his eye and indicated he lost control when he attempted a change in traffic lanes.
With respect to negligence charged to Adams, the applicable principles of law are clearly set forth in Vowell v. Manufacturers Casualty Insurance Co., 229 La. 796, 86 So.2d 909, 913, wherein it is stated:
“Our rule that a motorist traveling on the public highways after dark or during a rainstorm, fog, or other abnormal condition, which prevents him seeing ahead, except imperfectly, and for a short time and distance, must guard against striking objects in the road with which he may be suddenly confronted, constitutes an exception to the general rule that a motorist may assume that the road is safe for travel even at night. [See, also, Suire v. Winters, 233 La. 585, 97 So.2d 404 (1957); Snodgrass v. Centanni, 229 La. 915, 87 So.2d 127 (1956); Dodge v. Bituminous Casualty Corporation, 214 La. 1031, 39 So.2d 720 (1949); Bertrand v. Trunkline Gas Company, 149 So.2d 152 (La.App., 3d Cir. 1963); Fontenot v. Lafleur, 124 So.2d 607 (La.App., 3d Cir. 1960 — cert. denied).] But that exception to the general rule is itself subject to the exception that a motorist traveling by night is not charged with the duty of guarding against striking an unexpected or unusual obstruction, which he had no reason to anticipate he would encounter on the highway. Jacobs v. Jacobs, 141 La. 272, 74 So. 992, L.R.A.1917F, 253; Kirk v. United Gas Public Service Co., 185 La. 580, 170 So. 1.” (Emphasis supplied.)
See, also:
Miller v. Kinney,
213 So.2d 124 (La.App., 3d Cir. 1968);
Sittig v. Southern Farm Bureau Casualty Ins. Co.,
198 So.2d 514 (La.App., 3d Cir. 1967 —writ refused);
Cox v. Insurance Company of State of Pennsylvania,
157 So.2d 593 (La.App., 2d Cir. 1963);
Page v. Northern Insurance Company of New York,
117 So.2d 279 (La.App., 2d Cir. 1959).
In the instant case, it does not appear to be urged or contended that the darkness of the night or the fact of the rain had any causal connection with the fact of Adams’ running into the Leon vehicle stopped in Adams’ lane of travel immediately beyond the crest of the overpass. Nor does it appear these facts had any causal relationship to the collision. We are in accord with the trial court’s conclusion that Adams was without fault.
*634 The court concluded that Leon, without explaining what happened, or why it happened, when the car went into a skid and became entangled in the fence, was guilty of negligence. The court expressed the view that it was incumbent upon Leon to establish what happened, and the cause thereof, when his car skidded, spun around, and came to rest with its back end entangled in the fence and the front end extended across a traffic lane on the interstate highway.
The court invoked and held applicable the doctrine of res ipsa loquitur. As was pointed out in Great American Indemnity Company v. Ford, 122 So.2d 111, 113 (La.App., 2d Cir. 1960):
“This doctrine, that when a thing which causes injury without fault of the injured person is shown to be under the exclusive control, actual or constructive, of a defendant and the injury is such as, in the ordinary course of things, does not occur if the one having control uses proper care, then the injury is presumed to have arisen from the defendant’s negligence or want of care. 65 C.J.S. Negligence § 220(2), p. 987; Saunders v. Walker, 229 La. 426, 86 So.2d 89; Gerald et ux. v. Standard Oil Co. of Louisiana, 204 La. 690, 16 So.2d 233; Lykiardopoulo v. New Orleans & C. R. Light & Power Co., 127 La. 309, 53 So. 575; Shields v. United Gas Pipe Line Company, La.App., 110 So.2d 881; Holder v. Lockwood, La.App., 92 So.2d 768; Leigh v. Johnson-Evans Motors, Inc., La.App., 75 So.2d 710; Johnson v. Louisiana Coca-Cola Bottling Co., Limited, La.App., 63 So.2d 459.”
This doctrine has been applied in cases involving motor vehicle collisions. DeGregory v. State, Department of Highways, 192 So.2d 834 (La.App., 1st Cir. 1966); Gulf States Utilities Company v. Guidry, 183 So.2d 122 (La.App., 1st Cir. 1966); Slayter v. Allstate Insurance Company, 180 So.2d 543 (La.App., 3d Cir. 1965).
Thus, when the doctrine of res ipsa loquitur applies, the burden shifts to the party having exclusive control of the instrumentality to show that the accident was caused by something for which he was not responsible. Northwestern Mutual Fire Association v. Allain, 226 La. 788, 77 So.2d 395, 49 A.L.R.2d 362 (1954); Brechtel v. Gulf States Elevator Corporation, 195 So. 2d 403 (La.App., 4th Cir. 1967); Tassin v. Louisiana Power & Light Company, 250 La. 1016, 201 So.2d 275, 277 (1967), affirming 191 So.2d 338 (La.App., 3d Cir. 1966).
We find no fault in the application of this doctrine to the facts of the instant case and are of the opinion that defendants have not sustained the burden of proof thus imposed upon them. Nevertheless, we are of the opinion that Leon’s negligence has been otherwise and affirmatively established. He did not maintain control of his vehicle; he lost control. He did not protect nor warn oncoming traffic of the danger created by the stoppage of his vehicle immediately beyond the crest of the overpass.
Lastly, for consideration is a question of the quantum of the awards to compensate plaintiffs for the injuries sustained. Plaintiffs, Mrs. Adams and O’Reilly, on behalf of Miss O’Reilly, by their appeal, seek an increase in the awards of damages.
Mrs. Adams sustained several lacerations about the forehead and scalp. She also had contusions of the face, knees and foot area, and a fracture of the ninth rib on the left side. She was hospitalized for approximately four days. She sustained no permanent injury but a minimum amount of scarring from the lacerations. Mrs. Adams was awarded $2,000 by the trial court to compensate her for her injuries. We are of the opinion that the award was not inadequate under the facts of this case.
Miss O’Reilly sustained an injury to her left wrist, termed a fracture of the distal third of the left radius. She also sustained lacerations of the scalp, left knee, and both ankles. She was hospitalized approximately four days and was required to use a *635 wheelchair for several weeks. She was under medical treatment of an orthopedic surgeon and a plastic surgeon for several months after the accident. There is a possibility she will need further plastic surgery on the scar on her knee. Dr. Lewell C. Butler, Jr., testified there is a probability the scar will stretch because of the area involved. The trial court awarded Miss O’Reilly $3,000 for her present injuries as a result of the accident and an additional $240 to cover the cost of plastic surgery which will necessarily arise in the future, based on the testimony of Dr. Butler.
On appeal, the trial court’s award of general damages for personal injuries should not be disturbed unless the appellate court finds that it has abused its great discretion in this regard. We are unable to hold that the award to Miss O’Reilly was so inadequate as to constitute an abuse of that discretion.
For the reasons assigned, and on finding no error in the judgment appealed, it is accordingly affirmed. Costs of the appeal are assessed against all appellants in equal proportions.
Affirmed.