309 So.2d 716 (1975)
Lorraine H. Ellis, wife of George S. ELLIS
v.
John COLEMAN et al.
No. 6606.
Court of Appeal of Louisiana, Fourth Circuit.
March 12, 1975.
*717 Corey, Salvaggio & Reed, Stephen C. Kogos, New Orleans, for plaintiff-appellee.
Hammett, Leake, Hammett, Hayne & Hulse, Craig R. Nelson, New Orleans, for defendants-appellants.
*718 Before LEMMON, STOULIG and MORIAL, JJ.
MORIAL, Judge.
About 5:00 P.M. on August 11, 1971 defendant, John Coleman was operating his vehicle in a drizzling rain in the right traffic lane of Esplanade Avenue[1] toward Lake Pontchartrain. Upon entering the 3100 block of Esplanade Avenue, Coleman observed a vehicle illegally stopped or parked in the right traffic lane and moved his vehicle into the left traffic lane to pass that vehicle. A vehicle traveling in the left lane in front of Coleman, came almost abreast or parallel with the plaintiff's vehicle which was parked adjacent to the right curb, and suddenly decelerated preparatory for a left turn. This vehicle gave no signal that it would turn left and Coleman quickly slowed his vehicle and moved into the right lane to avoid a sudden stop. Seeing plaintiff for the first time, Coleman applied his brakes and his car skidded into the left rear of plaintiff's vehicle causing plaintiff to be struck as she attempted to enter her car. Coleman then swerved his vehicle to the right to avoid pinning plaintiff between his and the plaintiff's vehicle.
Defendants argue (1) Coleman was not guilty of the negligence which was the sole and proximate cause of the accident, but that the driver of the double parked vehicle and the driver of the vehicle making the left turn were guilty of negligence which was the proximate cause of the accident; (2) the accident was caused by a sudden emergency not of defendant's making; and (3) plaintiff was guilty of contributory negligence. Defendants further contend that the trial judge awarded plaintiff damages more than once for each injury and thereby abused his "much discretion." Defendants argue that such awards, as were made, are in effect prohibited punitive or exemplary damages.
We are of the opinion that the question of negligence on the part of the defendant-driver and contributory negligence on the part of the plaintiff-pedestrian requires little discussion.
Coleman testified: the car in front of him in the right traffic lane was stopped without anyone in it and by looking through this empty vehicle he ascertained that the roadway in front of it was clear of traffic; therefore, he changed from the right traffic lane into the left traffic lane with the intent of immediately moving back into the right traffic lane after he passed the stopped vehicle; his change of lane put him approximately fifty feet behind a car traveling in the left lane that suddenly decelerated and stopped almost abreast or parallel with plaintiff's parked vehicle; he made preparations to move back into the right traffic lane immediately after he passed the stopped or parked vehicle to avoid a sudden stop behind the left turning vehicle; he checked his rear view mirror, moved into the right traffic lane and for the first time saw the plaintiff; he applied his brakes and turned to his left to avoid striking plaintiff but in doing so struck the left rear end of her auto; he then turned to his right again to avoid pinning plaintiff between the two vehicles.
Plaintiff's uncontradicted testimony is that she had placed two bags of groceries in the back of her station wagon which was parked parallel to the curb in the 3100 block of Esplanade Avenue. She then looked, saw no obstruction, and proceeded along the side of her vehicle to the driver's door. Facing the car with her hand on the door, she heard a loud screeching noise, turned and saw Coleman's swerving vehicle. She testified she woke up on the ground and was unable to recall what actually struck her.
The testimony is unclear as to whether or not plaintiff was in fact struck by the Coleman vehicle. Nevertheless, there is no *719 dispute that plaintiff's injuries were sustained as a result of the accident.
The doctrine of sudden emergency is enunciated in Whitehead v. Cruse, 279 So. 2d 802 (La.App. 2 Cir. 1973) cited in defendant's brief. Learned counsel for defendants, apparently relying on the doctrine of sudden emergency coupled with the rule that, in the absence of evidence establishing a motorist operated an automobile in a negligent manner, a party injured by such motorist may not recover from him, cites Sailor v. Mencer, 169 So. 2d 271 (La.App. 1 Cir. 1964); Brignac v. Pan American Petroleum Corporation, 224 So.2d 84 (La.App. 3 Cir. 1969); O'Reilly v. State Farm Mutual Automobile Ins. Co., 230 So.2d 630 (La.App. 2 Cir. 1970); and Wilks v. Hunter, 230 So.2d 899 (La.App. 1 Cir. 1970). Although these cases are inapposite and easily distinguishable from the case at bar, it is unnecessary, for purposes of the present discussion, to detail their distinguishing features. Suffice it to say that in Sailor, supra, a child on a bicycle was struck when it suddenly darted in the path of an automobile traveling at a reasonable rate of speed, before the driver could stop or swerve to avoid the accident. Wilks, supra, is factually similar to Sailor, supra, and involves a boy on a bicycle, who was preceded by two other boys, coming from a traversing path, being struck by a truck proceeding in its lane of traffic at a safe speed. In O'Reilly, supra, an accident occurred suddenly when a vehicle collided into a stopped vehicle on an interstate highway facing across the traffic lanes.
Coleman testified that he made the conscious decision to avoid a sudden stop by moving back into the right lane. A driver is under an obligation not to move his vehicle from one traffic lane into another lane until he has first ascertained that such movement can be made with safety.
Coleman had not only the obligation to determine that he could proceed in the left lane safely after having passed the vehicle stopped in the right lane but, when he decided not to stop suddenly and go around the decelerating left turning vehicle, he came under a duty to ascertain that he could safely proceed in the right lane before entering it. A motorist is charged with the responsibility of seeing what he could or should have seen in the exercise of due care. Coleman failed to carry the burden of going forward with the evidence to establish the existence of a sudden emergency to which he did not contribute. It is clear that the defendant driver was attempting to avoid a sudden emergency of his own making, either because he was following the preceding vehicle too closely or because he changed lanes without ascertaining he could safely do so.
Coleman argues that even if he was negligent, plaintiff's contributory negligence bars her claim. We think not. Plaintiff testified that she looked for oncoming cars in the right traffic lane prior to entering the street. In all probability she saw none in view because of the stopped vehicle in the right traffic lane. Under the circumstances Mrs. Ellis had a right to assume that no vehicle would dart from behind another vehicle into the lane in which she was lawfully entering her car. Her sister-in-law, Miss Georgette Ellis, a witness to the accident, testified, as did plaintiff, that Mrs. Ellis was never near the four foot distance defendant claims she was away from her car. As the trial judge did, we find no contributory negligence on the part of the plaintiff. We agree with the holding of the trial judge that the defendant-driver "was negligent in trying to pass a vehicle on the right at a time when the area into which his vehicle was to go was occupied by a pedestrian whom he unfortunately did not see until too late."
Defendants contend that the report of Dr. R. C. Grunsten who examined plaintiff at their request, should not have been introduced in evidence. It is their contention that the trial judge indicated he would draw an unfavorable conclusion as *720 to the testimony of Dr. Grunsten because defendants failed to produce him at trial. We agree with the defendants. The law states that where either party could have called the witness or where the witness is equally available to either the plaintiff or the defendant no inferences can be drawn from the failure of one to call such witness. Elder v. Westside Transit Lines, Inc., 271 So.2d 569 (La.App. 4 Cir. 1973). Accordingly, we do not consider that report in the determination of this matter.
Plaintiff sustained injuries which kept her in Baptist Hospital for a period of 12 days and thereafter she received 75 physiotherapy treatments. Injuries were described as pain, swelling and discoloration of the left shoulder, multiple contusions, generalized muscle aches with an avulsion fracture of the left humerus. She received abrasions of left knee and tenderness over the trochantric bursa. She received bruises and swelling and ecchymosis about her face and head which caused her jaw to be partially immobilized for a short period. She also sustained a left lumbarsacral strain which together with the injuries to the shoulder required the 75 physiotherapy treatments over a period of a year. Dr. Claude Garrett estimated that plaintiff had only 25% of the motion she should have in the left upper extremity at the beginning of treatment but improved to a point of near normal by the end of the treatments.
As a result of head injuries plaintiff sustained a 25-30% permanent loss of hearing in her left ear and a minimum loss of hearing in her right accompanied by an echo sensation, a ringing or tinnitus. Plaintiff complains of a constant echo sensation resulting in the fact that she cannot judge how softly or loudly she speaks.
Did the trial judge abuse his "much discretion" in the award of $27,700.00 in general damages for the injuries sustained? To answer this question, we deem a further review of the medical testimony and plaintiff's injuries necessary.
Three doctors testified as to the injuries sustained by Mrs. Ellis. The first was Dr. Truman Kerr, an orthopedic surgeon who treated plaintiff in the emergency room of Baptist Hospital on the date of the accident. He stated that she was complaining of pain in her left shoulder, left side of her face and of her left knee and left leg. X-rays at that time revealed a fracture in her shoulder accompanied by swelling and discomfort and discoloration. She further had ecchymosis and swelling of her left temporal and zygoma (cheek bone) area. The fracture to the neck was of the projection of the humerus (tuberosity) with a slight extension of fracture line into the cervical neck. The arm was put in a sling for three weeks and approximately September 21 plaintiff was instructed to start active motion. She was sent to Dr. Garrett in the physical medicine department of Baptist Hospital. On February 24, 1972 plaintiff was again seen by Dr. Kerr. At this time plaintiff was still complaining of pain in the left shoulder and some tenderness of the rotator cuff posteriorly which indicated tendinitis of the supraspinatus tendon or rotator cuff. This indicated swelling of that tendon which is the muscles of the shoulder that attach along the tuberosity that was broken. Since tendinitis indicates a swollen tendon, cortisone was administered to reduce the swelling and pain. Dr. Kerr further testified that there was a bruising of the bursa or tendon resulting in bursitis in the hip.
Next to testify was Dr. Edward B. Edrington who is a specialist in ear, nose and throat. He first saw plaintiff the day after the accident and found upon examination a hemotoma or discoloration, black and blue marks, swelling around the left ear, and difficulty in opening her mouth at that time. The eardrum itself looked fine but plaintiff did describe a hearing loss and some instability on sudden motions accompanied by ringing noises or tinnitus in her ear. Dr. Edrington prescribed a hearing test which resulted in the diagnosis of a bilateral mixed hearing loss. While both *721 ears showed some hearing loss, the left ear appeared much worse. A conductive hearing loss is produced by anything that would interfere with the transmission of sound from the air to the inner ear or hearing mechanism, while a nerve loss would indicate damage to the inner ear itself; that is, the hair cells or sentry cells of the inner ear. Dr. Edrington related this hearing loss to the trauma of the accident. He testified that when there is a hearing loss of a greater nature in one ear than in the other that an echo sensation within the head results. He further testified that while an operation might alleviate the echo sensation and repair some of the damage that he would not recommend it as no operation is a certainty, and plaintiff might not have that much to gain. He further testified that while the normal individual of approximately plaintiff's age would have a 12 decibal hearing loss for pure speech tones, plaintiff's decibal loss for pure speech tones is approximately 35. He opined that plaintiff lost some three dimensional effect in her hearing and she has lost her acute for people talking on her left side, with difficulty particularly in a crowded room.
Dr. Ronald J. French, a specialist in ear, nose and throat also testified about his clinical examination of the plaintiff some two years subsequent to the accident. It was his opinion that there was a conductive hearing loss in the left ear. As a result of his audiometric testing, the left ear was shown to have a 25 to 30 percent loss of hearing.
A damage award of a trial court is to be adjusted only when there has been a doubtless abuse of the trial court's "much discretion". The application of the rule enunciated in Miller v. Thomas, 258 La. 285, 246 So.2d 16 (1971) has been recently ratified by our Supreme Court in the case of Bitoun v. Landry and The Travelers Insurance Company, 302 So.2d 278 (La.1974). In that case a judgment of this court was reversed and the award of the district court for special damages was reinstated with the court stating at page 279:
* * * "The question is not whether a different award might have been more appropriate, but whether the award of the trial court can be reasonably supported by the evidence and justifiable inferences before it. That such evidence might also support a greater (or smaller) award will not justify a change in the amount by the appellate court. Only when the trial court abuses its broad discretion should the award be adjusted, either up or down."
This record discloses no abuse of the trial judge's "much discretion".
However, defendants also argue that the trial judge awarded damages several times for the same injuries. We think not. The trial judge did provide a more detailed specification of the items of general damages for injuries than is normally done in a judgment; however, for no specific element of her injuries did the plaintiff recover twice. The awards made are not punitive or exemplary.
The record does not support nor are we inclined to approve the award of the trial judge for a specific item of general damages designated for plaintiff's "inability to participate in civil, charitable and social activities." Further, we think, the trial judge erred in allowing plaintiff to recover for both the services of a "live in maid" and two round trip tickets from Marshall, Texas for her mother-in-law to stay with her and care for her househould during the same period of time which she is allowed recovery for the services of her "live in maid." Accordingly, the judgment is reduced by the costs of the two round trip tickets in the amount of $150.00 plus $1,000.00 allowed for plaintiff's "inability to participate in civil, charitable and social activities." Additionally, when the various enumerated items of the judgment are totaled the sum should be $32,208.80 and not $32,308.00.
*722 For the foregoing reason the judgment of the district court in favor of the plaintiff and against the defendants is reduced to $31,058.80, and otherwise affirmed. Defendants to pay all costs.
Amended and affirmed.
NOTES
[1] Esplanade Avenue is a six lane paved boulevard with a parking lane and two lanes for moving traffic on each side.